**UNITED STATES of America**
**v.**
**George J. WILSON, Jr., and William L. Burke.**
**Crim. No. 71–676.**

United States District Court,
E. D. Pennsylvania.

July 19, 1972.

Warren D. Mulloy, Asst. U. S. Atty., Carl J. Melone, U. S. Atty., Philadelphia, Pa., for plaintiff.

William J. Brady, Jr., Philadelphia, Pa., for defendant Burke.

Philip D. Lauer, Easton, Pa., for defendant Wilson.

## MEMORANDUM

NEWCOMER, District Judge.

This case is now before the Court on motions by both defendant Burke and defendant Wilson to dismiss. Each alleges that his right to due process of law under the Fifth Amendment of the Constitution has been violated by pre-accusation delay for which the Government is responsible. Because of the recent and complex developments concerning the Constitutional dimensions of pre-accusation delay, we will discuss the recent trends in this area of the law first before moving on to a discussion of the law as it applies to the facts of this case.

## THE RELEVANT LAW

The most significant recent decision relevant to the present case is United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). The *Marion* case involved a claim that the simple passage of three years from the time the Government had enough on Marion to prosecute him to the time that an indictment was actually brought violated Marion's rights to Due Process of Law under the Fifth Amendment and speedy trial under the Sixth Amendment. The Court held that the Sixth Amendment does not apply to any case until the defendant becomes an accused. The Court further held that a person does not become an accused until either formal charges are brought against him or his liberty is in some way restricted. Since the indictment was the first act of accusation on the facts before the Court, the Court held that the Sixth Amendment right to speedy trial was of no relevance. The Court held that, for pre-accusation delay to rise to the level of a violation of due process, there must be more shown than the simple passage of time. It is important to note, however, that although the Court did allude to at least one factor which might provide the nec-

essary extra something, (provable prejudice greater than that which normally results from the simple passage of time) it did not say or claim to say conclusively and exhaustively what all possible factors might be, but left the question open for future cases. Marion, supra, 404 U.S. at 323–325, 92 S.Ct. at 465–466, 30 L.Ed.2d at 480, 481. The recent Third Circuit cases of United States v. Melnick, 458 F.2d 909 (3rd Cir., 1972) and United States v. Dukow, 453 F.2d 1328 (3rd Cir., 1972) have made it clear that actual provable prejudice is one factor to be considered in these cases but have not dealt with any other possible considerations.

## THE LAW APPLIED TO THE FACTS AT BAR

We now turn to the case at hand and the questions whether or not the authorities knew the identity of the accused for a significant time before the accusation was made, and whether or not there was an unreasonable delay between that time and the bringing of the indictments.

The relevant facts bearing on these issues are as follows. On November 18, 1966, Thomas J. Gallagher, Regional Director of the Federal Housing Administration, sent a letter to Easton Arms Incorporated setting out certain conditions for continued FHA support of the Kennedy Gardens Housing Project in Easton, Pennsylvania. The FHA received two letters in reply, one over a signature reading "George Wilson", who was then Chairman of the Board of Easton Arms, and one over a signature reading "William L. Burke", who was then President of Easton Arms. The indictment charges that each of these letters contains a false and misleading statement of fact about a matter within the jurisdiction of the FHA.

Shortly after this, apparently in early 1967, the FHA began an investigation of Mr. Burke, apparently including but not limited to the contents of the letter here in question. Mr. Wilson was also investigated apparently as a spin-off of the original investigation. The FHA inves-

tigation lasted over a year, when the matter was transferred to the Justice Department and referred to the FBI in April of 1968. The FBI conducted extensive investigation of Mr. Burke, and incidental thereto, Mr. Wilson, from April 1968 until December of 1969, when the matter was referred to the Department of Justice Strike Force for presentation to a grand jury, in February of 1970. No indictments were returned, and the FBI conducted further investigations until approximately June of 1970, when the entire matter was referred to the United States Attorney's Office in the Eastern District of Pennsylvania. There the matter lay for some seventeen months, until an indictment was returned on November 17, 1971, some four days before the running of the statute of limitations. It is obvious that the Government knew of Mr. Burke and Mr. Wilson and their relation to the charges now before the Court by late 1968.

 The investigation of Mr. Burke and Mr. Wilson was not limited to this specific charge, however, but involved their whole relationship to FHA projects and funding. It is clear that the Government has no obligation to bring charges "the moment they have the minimum evidence to establish probable cause". Hoffa v. United States, 385 U.S. 293, 310, 87 S.Ct. 408, 417, 17 L.Ed.2d 374 (1966). We are of the opinion that the best interests of justice are served by the holding of the results of such an investigation such as the one in this case until its completion. We will not place the Government under the constraint of bringing charges turned up by such an investigation piecemeal, as long as the investigation is reasonably conducted. Although the length of time Mr. Burke and Mr. Wilson were under active investigation seems long, some three and one-half years, we are dealing with an area which produces complex crimes of financial misappropriation, easily concealed and difficult to uncover. Under the circumstances, we can find no unreasonable delay up to June of 1970.

The seventeen months from June of 1970 until the indictment was returned is a different matter. Whatever the size of the file on Wilson and Burke, it had been reviewed by the Strike Force in January and February of 1970, and the Government does not contend that it discovered the letter here in question, or any dispositive evidence of the crime here charged, after that time. It takes some time to transfer a file and bring an indictment, but in this case it shouldn't have taken seventeen months. The Court is of the opinion that there was an unreasonable delay in bringing the indictment in this case.

■ Next, we must consider whether this unreasonable delay was maliciously motivated or undertaken to gain tactical advantage. There has been no credible evidence that it was and we therefore conclude that it was not.

Next, we must deal with defendants' argument that they have been specifically and provably prejudiced by the unreasonable delay in bringing the indictment. It will be helpful to deal with the contentions of both defendants separately.

Mr. Burke, testified at the hearing that there are two persons who are now unavailable to testify at trial who might be considered witnesses for the defense. One is a Mr. Brinker, who was the office manager of the Union Local which was the sponsor of the Easton Arms Project at the time the letters were written and the other is a Mr. Schaeffer, who was then the business agent for the Union Local. As to Mr. Brinker, it has been stipulated that he died sometime in 1967. As this was during the investigation ruled reasonable above, the Government is not chargeable with any risks resulting from his death and consequent unavailability as a witness. The Government is only chargeable with that prejudice resulting from the unreasonable delay, that is, as previously discussed, the time from at least the fall of 1970 to November 18, 1971.

As to Mr. Schaeffer, Mr. Burke urges that he could testify concerning Mr. Burke's actions and the words expressing his attitudes and state of mind when the letters on which this indictment was based were written, and further that he could testify concerning the later negotiations between the FHA and Easton Arms, and their relevance on the truth of the letter bearing his signature when it was written.

Of course, in this kind of case, Mr. Burke's intent and belief is an element of the crime. If in fact Mr. Schaeffer could have testified concerning these things, his testimony would have been relevant. Also, any testimony he might have presented concerning the subsequent negotiations with FHA might also be pertinent in clarifying the true meaning and intent of the letters. But Mr. Schaeffer is not the only witness concerning these things, nor is he alleged to have any unique knowledge of them.

■ Mr. Wilson has an even stronger argument that the absence of Mr. Schaeffer is prejudicial to his case. Wilson claims he never wrote or signed the letter which is the subject of the charge against him. At the hearing on this motion, Burke testified that he dictated the Wilson letter, and that Schaeffer knew this. He further testified that the letter was probably signed by Miss Hunt, the Easton Arms "girl Friday", as this was the common office practice, and that Schaeffer could testify to this practice also, although probably not to the actual signing of the letter by Miss Hunt. So, by this testimony, Schaeffer is a very material witness as regards Wilson's relation to the letter sent out over his name, and specifically to the probability that he actually signed the letter and the circumstances of the preparation of the letter for signature even if Wilson signed it himself. The Government disputed Mr. Burke's version of the facts regarding Schaeffer's knowledge and importance. Agent Hargis testified that Schaeffer had been interviewed and gave a signed statement denying any specific knowledge concerning the letters in question. While this is hearsay, and the witness was not available for the confrontation of cross-examination, the Court is

of the opinion that the agent's testimony is admissible on the issue of the prejudice resulting from an absent witness.

The issue is raised on pretrial motion to the court alone. We are dealing with a preliminary hearing at the request of the defendant on an issue on which defendant bears the burden of persuasion. Further, defendant is urging that the witness now unavailable for in-court testimony is or was crucial to his defense. Receiving hearsay concerning the state of that absent witness' knowledge or claims to knowledge cannot therefore be said to raise a question of a denial of the right of an accused to confront the witnesses *against* him under the Fifth Amendment.

Therefore, only the criteria justifying an exception to the hearsay rule need be met in this case in order properly to receive such hearsay. Wigmore defines these as generally necessity, usually resulting from the fact that otherwise the benefit of the evidence would be lost entirely (Wigmore, Evidence, § 1421), and the probability of trustworthiness (Wigmore, Evidence, § 1422). As to necessity resulting from the fact that the evidence would otherwise be lost, the defendants may not challenge this as it is they who claim the witness is unavailable. This is sufficient necessity but in this case there is even more. There is the necessity of counterbalancing the defendants' unique position of being able to control the state of the record concerning what the absent witness knew if the hearsay were excluded. Not to allow hearsay in such a case as this would usually mean that the testimony of the defendants on the issue of the absent witness' opportunity for knowledge of the case would be the only admissible testimony, thus placing an interested party in complete control of the contents of the record.

 The issue of the trustworthiness of the hearsay in a case such as this is difficult. Mr. Schaeffer may have had motive to deny knowledge of the letters to the FBI to cover his own involvement. However, we must remember that the issue before us is ultimately whether the prejudice to defendants' case resulting from the Government's undue delay has substantially impaired defendants' right to a fair trial. The agent's testimony is certainly relevant on the absent witness' real value to the defendants' case. Either Schaeffer didn't know about the letters, or he was reluctant to admit he knew, and in either case his value to the defense and the prejudice to their case is reduced. The Government is not made responsible because of undue delay for the reluctance of witnesses. When the issue before a court is the prejudice resulting from the absence of a witness we believe that such hearsay statements of that witness concerning his knowledge are necessary, relevant, and trustworthy as to the real issues at hand and should be received. A trial court must be presumed to know the dangers of hearsay and may discount such evidence as need be in each case.[1]

 In the instant case, the bulk of any faded memories or other unliquidated prejudices resulting from the passage of time came during the period of reasonable investigation, and Schaeffer's value as a witness is questionable. This, coupled with the availability of other witness on all pertinent facts in Schaeffer's knowledge, undermines the position of both defendants. The defendants bear the burden of persuasion here to establish that their right to due process of law has been violated. On balance, we cannot say that the unreasonable delay of the Government and the resulting absence of Mr. Schaeffer as a witness for the defense coupled with the normal ef-

---

1. In this case, there is perhaps less problem than in most, since the hearsay here in question was elicited by defendant Wilson's attorney on cross-examination and neither defendants' attorneys objected. Therefore, any objections on hearsay or Fifth Amendment grounds could be deemed waived. The Court feels the issue is too important to be dismissed solely on those grounds, however, without substantive consideration.

fects of the unreasonable delay of seventeen months coming at the end of a reasonable three and a half year investigation, have significantly prejudiced the right of either defendant to a fair trial.