**UNITED STATES of America**
**v.**
**George J. WILSON, Jr.**
**Crim. A. No. 71-587.**

United States District Court,
E. D. Pennsylvania.
April 18, 1973.

Warren D. Mulloy, Asst. U. S. Atty., Philadelphia, Pa., for the Government.

Philip D. Lauer, Easton, Pa., for defendant.

MEMORANDUM AND ORDER

JOHN MORGAN DAVIS, District Judge.

The defendant has petitioned this Court for consideration of a number of post-trial motions which include a motion for new trial, motion in arrest of judgment and motion for judgment of acquittal.

Before commencing a discussion of the issues at hand, the Court will relate a brief account of the facts. The indictment, returned on October 28, 1971, charged the defendant with a violation of 29 U.S.C. § 501(c) which is the embezzlement of funds of a labor organization. The defendant was found guilty by a jury on March 17, 1972, of converting $1,233.15 of the monies of Local No. 367 of the International Brotherhood of Electrical Workers of Easton, Pennsylvania (hereinafter I.B.E.W.) to use in paying for a portion of the expenses of

his daughter's wedding reception at the Easton Motor Hotel. The manner in which the money was converted was by way of a check signed by two officers of the Union of which Mr. Wilson was Business Manager.

The F.B.I. began its investigation in April 1968 and continued through June 1970. However, the bulk of the F.B.I. examination was completed by June 1968. Following the investigation an evaluation was made by the Organized Crime Strike Force of the Department of Justice and by the United States Attorney's Office. The evaluations resulted in a delay which caused the Indictment to be returned three days prior to the running of the Statute of Limitations.

The Court held a pretrial hearing on February 17, 1972, to hear argument on Motions to Inspect the Grand Jury Minutes; for a Preliminary Hearing; and to Dismiss the Indictment. All of the motions were denied. On March 14, 1972, a rehearing was held on the Motion to Dismiss. The Court after hearing the testimony of Mrs. Jean Sippel, the office secretary of the Union, and of George J. Wilson, the defendant (pretrial Notes of Testimony), denied the defendant's Motion to Dismiss.

The defendant presents to the Court six points in support of his Motion for a New Trial. The first point is whether the Court erred in denying Defendant's Motion to Dismiss. The defendant alleges that undue prejudice was caused by an unreasonable pre-indictment prosecutorial delay and is in violation of the Fifth and Sixth Amendments of the Constitution. The leading case on this point is United States v. Marion, 404 U. S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). In the *Marion* case, supra, the Supreme Court held that the Sixth Amendment right to a speedy trial does not apply until the defendant is actually indicted. Thus the entire basis for this Motion is whether the defendant's Fifth Amendment due process rights have been violated. The Court said at 324, 92 S.Ct. at 465:

The Government concedes that the Due Process Clause of the fifth Amendment would require dismissal of the indictment if it were shown at trial that the pre-indictment delay in this case caused substantial prejudice to appellees' rights to a fair trial. . . . Cf. Brady v. Maryland, 373 U.S. 83 [83 S.Ct. 1194, 10 L.Ed.2d 215] (1963), Napue v. Illinois, 360 U.S. 264 [79 S.Ct. 1173, 3 L.Ed.2d 1217] (1959).

The Court did not elaborate on substantial prejudice but left this up to future cases.

■ The first element of a violation of due process is to determine whether there was unreasonable delay. In this case there was a delay of approximately 16 months from the time the investigation was complete to the time the indictment was returned. The Government claims the delay was in evaluating the case by the Organized Crime Strike Force and the Attorney General's Office. Unfortunately, this argument does not impress the Court, and the Court will follow Judge Newcomer's language in United States v. Wilson, Jr. et al., 346 F.Supp. 371, at 374 (E.D.Pa.1972), when he said:

It takes some time to transfer a file and bring an indictment, but in this case it shouldn't have taken seventeen months. The Court is of the opinion that there was an unreasonable delay in bringing the indictment in this case.

Thus this Court also finds unreasonable delay.

■ The Court must now deal with the problem of whether the defendant was substantially prejudiced by the unreasonable delay in bringing the indictment. Under the dictum of the *Marion* decision, supra, it is necessary for the defendant to show the unreasonable delay caused substantial prejudice, not merely speculative prejudice.

The defendant contends that there are two potential witnesses, a Mr. Brinker, Past Treasurer of I.B.E.W. and a Mr.

Schaefer, Past President of I.B.E.W. who were the co-signors of the check involved. It is contended that Mr. Brinker and Mr. Schaefer as co-signors could assist in Mr. Wilson's testimony and possibly explain away the circumstances of the check. Mr. Brinker died prior to 1970 and consequently his testimony would have no bearing on the question of prejudice during the period of unreasonable delay which commenced in late 1970.

However, the potential witness, Mr. Schaefer, who became terminally ill during the period of unreasonable delay, presents a different problem. The question that is presented to the court is whether there is substantial prejudice, if the government unreasonably delays in presenting an indictment and a potential witness becomes incapable of testifying during that period of unreasonable delay. This question differs from the *Wilson* case, supra, before Judge Newcomer because in that case there were other witnesses who could testify on the points which Mr. Brinker and Mr. Schaefer were knowledgable. Here, the defendant contends that these two men were the only one's knowledgable on the signing of the check and substantial prejudice resulted because Mr. Schaefer was unable to testify.

The Court takes notice of the facts brought out in the testimony of the case concerning the potential testimony of Mr. Schaefer. Mr. Wilson, the defendant, stated (40–41 of the Notes of Testimony of the pre-trial hearing held on March 14, 1972) that the signing of all union checks was in the hands of Mr. Brinker and Mr. Schaefer. During the trial (N.T. 133–134) the defendant indicated that he never involved himself with bookkeeping or the internal affairs of the office. Finally, Mr. Wilson stated that he ordered no one to write the check in question. (N.T. 164–165).

On the Government's side, it was established that the bill from the wedding reception was sent to the defendant's home address and not to the union (N.T. 62). Also, Mrs. Jean Sippel, the office secretary for the I.B.E.W. and the individual who prepared the checks for the signature of Mr. Brinker and Mr. Schaefer stated that at no time had a check prepared by her been sent back without being signed. Other testimony established that Mr. Wilson controlled the union (N.T. 17), and that Mr. Schaefer and Mr. Brinker were office help who owed their jobs to the defendant. (N.T. 80,181).

Since both sides make opposite contentions about the potential testimony of Mr. Schaefer, the Court cannot make an adjudication of the veracity of the testimony. The Court finds that the unreasonable delay was substantially prejudicial to the case of Mr. Wilson in that the only witness who could explain the circumstances of the check became terminally ill during the period of unreasonable delay. Although the government contends that this is only a showing of potential or speculative prejudice, there is an absolute certainty as a signer of all checks that Mr. Schaefer would add testimony of utmost importance to the trial. Because of the unreasonable delay, substantial prejudice resulted which violated the defendant's due process rights under the Fifth Amendment.

The remaining points of the defendant's argument need not be ruled upon because the Court will dismiss the indictment on the basis that the defendant was substantially prejudiced prior to trial.