UNITED STATES of America

v.

R. Bruce ALDERMAN.

Crim. No. Y-76-0319.

United States District Court, D. Maryland.

Dec. 13, 1976.

Daniel M. Clements, Asst. U. S. Atty., Baltimore, Md., for plaintiff.

Brendan V. Sullivan, Jr., Washington, D. C., for defendant.

JOSEPH H. YOUNG, District Judge.

R. Bruce Alderman was indicted by the federal Grand Jury on June 3, 1976, charged with nine counts of mail fraud, 18 U.S.C. § 1341, four counts of interstate transportation in aid of bribery, 18 U.S.C. § 1952, and aiding and abetting the violation of those statutory provisions, 18 U.S.C. § 2. The indictment alleges that, beginning in 1967 and continuing through 1972, defendant Alderman participated in a fee-splitting scheme with James D. Nolan, an unindicted co-conspirator, and N. Dale Anderson, then Baltimore County Executive; the fees to be derived from an arrangement with a Chicago law firm whose services to Baltimore County were to be sponsored by Alderman in his capacity as County Solicitor.

Alderman has made seven separate motions in advance of trial,[1] several of which raise serious, troubling questions concerning both the substantive application of the federal statutes involved and the manner in which the case was presented to the grand jury which convened on June 3, 1976.[2] A review of the applicable facts and controlling cases requires that the indictment must be dismissed for delay which has resulted in a violation of defendant's due process rights under the Fifth Amendment of the United States Constitution. Thus, the Court need not reach a determination on the other motions.

Mindful of the seriousness of the charges which defendant made and the remedy which he sought, the Court heard full argument on the motions for dismissal of the indictment on Fifth, Sixth and Fourteenth Amendment grounds at the hearing held August 30, 1976, at which time the Court heard from Russell T. Baker, Jr., former Assistant United States Attorney, Ronald S. Liebman, Assistant United States Attorney, and Barnet D. Skolnik, Assistant United States Attorney and head of the special team of federal prosecutors assigned to investigate official corruption in Maryland. Defendant submitted sworn affidavits from himself, his attorneys, William F. Mosner and Brendan v. Sullivan, Jr., George Beall, former United States Attorney for the District of Maryland from 1970 through March 1975, and Francis C. Barrett, member of the Baltimore County Council from 1966 through 1974; defendant also submitted through his attorney a verbatim report of a conversation between the attorney and G. Walter Tyrie, Jr., member and Chairman of the Baltimore County Council in 1967, and Herbert E. Hohenberger, who was Secretary to the Baltimore County Council in 1967. It was stipulated that if each of the persons whose affidavits were submitted had been called they would have testified as they did in their sworn statements.

This Court ruled at the time of the hearing that the defendant's Fourteenth and Sixth Amendment arguments for dismissal of the indictment were without merit, since the Fourteenth Amendment is applicable only against the States and the Sixth Amendment "speedy trial" evaluation, as outlined in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), is prompted only by a formal charging of the defendant. *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). The opinion in *United States v. MacDonald*, 531 F.2d 196 (4th Cir. 1976), is squarely rooted in the Sixth Amendment guarantee of a speedy trial after formal accusation. A defendant cannot turn his interviews (and those of his lawyers) with the United

---

1. Motion for change of venue; motion for disclosure of Grand Jury Vote and attendance records; motion to dismiss for abuse of Grand Jury process or to compel discovery; motion for *Brady* material and to compel discovery motion to dismiss for preindictment delay in violation of 5th, 6th and 14th [sic] amendments of the U.S. Constitution and for prosecutorial abuse, overreaching and vindictiveness; motion to dismiss counts 1–9 for failure to state an offense under 18 U.S.C. § 1341; motion to dismiss for failure to state an action under 18 U.S.C. § 1952 or for duplicity.

2. The June 3, 1976 Grand Jury was the second Grand Jury to hear evidence against Alderman, but the only one from which the federal prosecutor sought an indictment.

States Attorney's Office into the equivalent of a formal charge for Sixth Amendment purposes.

It is the Fifth Amendment guarantee of due process that is at issue in this case, requiring a careful examination of the defendant's factual allegations in light of the Supreme Court's holding in *United States v. Marion, supra.* The Court stated that the statute of limitations for criminal prosecutions is the major safeguard of a potential defendant's right of a fair trial, setting a limit beyond which there is an "irrebuttable presumption" that a defendant is prejudiced. *United States v. Marion*, 404 U.S. at 322, 92 S.Ct. 455. Since, in *Marion*, the defendants had not alleged or proved any actual prejudice but had relied on "the real *possibility of prejudice* inherent in any extended delay: that memories will dim, witnesses become inaccessible, and evidence be lost," 404 U.S. at 325–6, 92 S.Ct. at 466 (emphasis added), the Court found dismissal of the indictment—brought within the limitations period—unjustified. As its guide for future cases it stated:

> [T]he statute of limitations does not fully define the appellees' rights with respect to the events occurring prior to indictment. Thus, the Government concedes that the Due Process Clause of the Fifth Amendment would require dismissal of the indictment if it were shown at trial that the pre-indictment delay in this case caused substantial prejudice to appellees' rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused. . . . However, we need not, and could not now, determine when and in what circumstances actual prejudice resulting from pre-accusation delays requires the dismissal of the prosecution. Actual prejudice to the defense of a criminal case may result from the shortest and most necessary delay; and no one suggests that every delay-caused detriment to a defendant's case should abort a criminal prosecution. To accommodate the sound administration of justice to the rights of the defendant to a fair trial will necessarily involve a delicate judgment based on

the circumstances of each case. 404 U.S. 324–5, 92 S.Ct. 465–466.

There is an unresolved split among the federal judicial circuits as to whether *Marion* establishes a single or dual-pronged test: must a defendant prove actual prejudice *and* prosecutorial intent to delay, or is the showing of one or the other sufficient? This Circuit has not decided any cases applying the *Marion* decision but has indicated it recognizes the constitutional question raised by deliberate prosecutorial delay. *United States v. Harbin*, 377 F.2d 78 (4th Cir. 1967).

Faced with no controlling guidelines in this Circuit and a broad spectrum of views in the other circuits, it has been helpful to review all *Marion* oriented decisions seeking to gather insight from the varying approaches in the opinions, while remaining alert to the Supreme Court's directive to exercise "delicate judgment" based upon the circumstances of each particular case.

## I. THE MARION TEST AS APPLIED IN THE FEDERAL COURTS

The federal courts are in agreement that a claim asserting prejudice to the defendant must consist of more than conclusory statements about the effect of the delay. The courts are not in agreement as to the degree of prejudice that must be asserted or the necessity of pleading and proving both prejudice *and* prosecutorial intent.

A. *First Circuit*—The First Circuit has had very few cases involving pre-accusation delay. In one case, *United States v. Daley*, 454 F.2d 505 (1st Cir. 1972), a three year delay in bringing one count of an indictment and a one and one half year delay in a second was held to be irrelevant in the absence of a showing of actual prejudice or purposeful governmental delay. In *United States v. Churchill*, 483 F.2d 268 (1st Cir. 1973), an indictment was brought "shortly before" the statute of limitations was to run on a crime committed four years before. The court found neither delay for tactical gain nor use of a prejudicial procedure, since the Government did not seek an

indictment until it had sufficient evidence of guilt. Although the wording of these two cases is ambiguous, the First Circuit seems to be among those who would require the two-prong *Marion* test.

B. *Second Circuit*—The Second Circuit initially was undecided whether prejudice alone would satisfy the *Marion* test, or whether a showing of prosecutorial "gamesmanship" was an additional requirement. *United States v. Iannelli*, 461 F.2d 483, 485 n.2 (2d Cir. 1972). Subsequent cases have not clarified the issue, since all have found a lack of actual prejudice to the defendant which foreclosed the possibility of dismissal of the indictment. Excusable delays were based upon governmental reluctance to charge a defendant not yet positively identified with the offense charged, *United States v. Foddrell*, 523 F.2d 86 (2d Cir.), *cert. denied*, 423 U.S. 950, 96 S.Ct. 370, 46 L.Ed.2d 286 (1975), unavoidable legal difficulties such as extradition of key witnesses, *United States v. Frank*, 520 F.2d 1287 (2d Cir. 1975), *cert. denied*, 423 U.S. 1087, 96 S.Ct. 878, 47 L.Ed.2d 97 (1976), and the complexities of conspiracy cases. *United States v. Brasco*, 516 F.2d 816 (2d Cir.), *cert. denied*, 423 U.S. 860, 96 S.Ct. 116, 46 L.Ed.2d 88 (1975). One of the most recent Second Circuit opinions, *United States v. Finkelstein*, 526 F.2d 517, 525–6 (2d Cir. 1975), *cert. denied*, 425 U.S. 960, 96 S.Ct. 1742, 48 L.Ed.2d 205 (1976), deliberately leaves open the question of the one or two part *Marion* test.

The Second Circuit has remained sensitive to the possibility that there might be presented a convincing case alleging prosecutorial abuse as the primary reason for dismissal of an indictment. Pre-indictment delay might invalidate a prosecution if the delay were calculated to "harass" a defendant, or so *Marion* would suggest. *United States v. Mallah*, 503 F.2d 971, 989 (2d Cir. 1974). The fact that courts seldom saw any serious justification for a hearing of intentional delay by the Government did not silence the:

> surprising amount of discussion in numerous opinions of various Courts of Appeals

in the federal judicial system relating to what might some day be proved or even plausibly alleged by a defendant in a criminal case to justify the dismissal of an indictment for prosecutorial misconduct in failing promptly to seek an indictment.

*United States v. Brown*, 511 F.2d 920, 922–3 (2d Cir. 1975). It should be noted that the Second Circuit has suggested that the effects of possible prejudice from delay might be reduced by the defendant's own attempts to preserve testimony of potential witnesses. *United States v. Frank, supra* at 1292, but such a quasi-requirement borders upon an impermissible shift in the burden of proof in a criminal case. *Cf. Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). The suggestion of the Second Circuit must, in any case, be restricted to situations occurring *after* an indictment or information is handed down, since that is when Rule 14, F.R.Crim.P., and its statutory counterpart, 18 U.S.C. § 3503, sanction pre-trial depositions.

C. *Third Circuit*—The Third Circuit has twice held that when there has been a valid governmental reason for delay in indicting and when there is either minimal evidence of memory loss or adequate substitute evidence secured from the Government through discovery, a defendant's due process rights are not violated. *United States v. Benson*, 487 F.2d 978 (3d Cir. 1973) [35 months delay but substantial evidence available from Government and delay due to complexities of case and Government's desire to protect parties from "improvident" criminal proceedings]; *United States v. Taylor*, 469 F.2d 284 (3d Cir. 1972) [8 months delay with no showing of actual prejudice, and Government involved in extensive preparation of fairly complex case]. Among the various district courts in the Third Circuit however, there is little harmony or consistency of opinion as to the degree of delay found to be "unreasonable" and the appropriateness of the one or two-prong *Marion* test. In one court it was indicated that an intentional pre-prosecution delay might itself be sufficient grounds to dismiss an indictment; considerable time

spent in investigating a "complex corporate financing scheme" would not be considered an intentional delay for purposes of gaining an advantage. *United States v. Heinze*, 361 F.Supp. 46, 57 (D.Del.1973), relying on *United States v. Dukow*, 453 F.2d 1328 (3d Cir.), *cert. denied*, 406 U.S. 945, 92 S.Ct. 2042, 32 L.Ed.2d 331 (1972). The same court, in a more recent opinion, *United States v. Whiteside*, 391 F.Supp. 1385 (D.Del.1975), referred to the *Marion* test as dual, and found that where there has been no showing of prejudice to defendant's ability to prepare his case, there should be no dismissal of the indictment on constitutional grounds.

Among the federal district court judges in Pennsylvania there is a split in interpretation of the Third Circuit "rule" on the *Marion* test. Judge Fogel in two different cases has referred to the *Marion* test as disjunctive: "either substantial prejudice to a defendant's right to a fair trial, *or* delay as an intentional device by the prosecution to gain a tactical advantage over the accused, must be shown in order to make out a due process violation." *United States v. Clark*, 398 F.Supp. 341, 350 (E.D.Pa.1975); *United States v. Dabney*, 393 F.Supp. 529 (E.D.Pa.1975), but found no evidence of intentional delay and insufficient evidence of actual prejudice. The indictment was dismissed in *United States v. Wilson*, 357 F.Supp. 619 (E.D.Pa.1973), *aff'd* unpublished opinion, 3d Cir. 1975, where the court followed the two-part *Marion* test, finding that the 16 month delay from the end of the investigation until the indictment was unexplained (thus "intentional") and unreasonable, and that defendant had shown substantial, non-speculative prejudice to his defense: a potential defense witness became incapable of testifying during the period of unreasonable delay, and no other substitute witness possessed the knowledge this witness once had. In *United States v. United States Gypsum Company*, 383 F.Supp. 462, 465 n. 2 (W.D.Pa.1974), it was rather pointedly asserted that the two-part *Marion* test was the only one that made sense, since each concept served "as the necessary counterpart of the other." The court did not

seek to distinguish *United States v. Dukow, supra*, which suggests otherwise, but found that "the inherently cumbersome nature of the investigation" and "the titanic scope of the Government's undertaking" justified any delays. Another recent decision, *United States v. Frumento*, 405 F.Supp. 23 (E.D. Pa.1975), openly announces disagreement with the one-prong *Marion* test used by the Third Circuit in *United States v. Dukow, supra*, and holds that in the absence of a showing of prosecutorial misconduct, it would be overly burdensome and unfair to place the "burden of responsibility on the prosecution for pre-indictment delays over which it frequently has no control." 405 F.Supp. at 28. The court stated that "mere conscious knowledge of the delay," without more, was not sufficient evidence of bad faith and purposeful delay.

A very different approach to prosecutorial delay was taken in *United States v. Harmon*, 379 F.Supp. 1349 (D.N.J.1974), a case in which the defendant had been indicted in 1971 for activities which terminated in 1966 and about which the Government had all facts necessary to indict by 1969. The court could find no reason offered by the Government for its delay, no new leads or information developed after 1969, no undercover investigation under way, no principals left to be interviewed, no lack of availability on the part of the defendant. The court stated:

> In the lack of any reason advanced by the government for the delay, we may infer that there was an intent by the government to secure a tactical advantage over the defendant. Such an intent can rarely be shown otherwise. . . . In view of the extreme difficulty of defendant in proving by competent evidence an intent by the government to secure tactical advantage by the delay, we can only adopt the adverse inference from its conduct, particularly in view of its failure to come forward with any reason to explain the delay.

379 F.Supp. at 1351–2.

D. *Fourth Circuit*—As previously indicated, there are no Fourth Circuit cases

construing the *Marion* opinion. Counsel have correctly noted, however, that a district court in Virginia and one in Maryland have considered pre-indictment delays in light of Fifth Amendment claims. In *Hamilton v. Lumpkin*, 389 F.Supp. 1069, 1075 (E.D.Va.1975), the court found that the *Marion* case could only be interpreted as posing an alternative test for due process violations: deliberate delay *or* actual prejudice. The court stated that deliberate, tactical delay by a prosecutor resembled such misconduct as knowing use of perjured testimony or refusal to provide *Brady* material upon request—a manipulation and misuse of prosecutorial power which was offensive to notions of constitutional justice.[3] A motion for dismissal of the indictment against one of the defendants in *United States v. Mandel et al.*, D.C., 415 F.Supp. 1033, decided April 5, 1976, was denied as the court noted the controversy over the one or two-part *Marion* test, but declined to elect the one or two-prong test after a finding of no evidence of deliberate delay or actual prejudice.

E. *Fifth Circuit*—Initially the Fifth Circuit applied the *Marion* test in a way which suggested that it permitted alternative means of finding Fifth Amendment due process violations. In *United States v. Schools*, 486 F.2d 557 (5th Cir. 1973), the court found that the pre-indictment delay was without consequence when charges were brought within the limitations period, there was no showing of actual prejudice *or* that the delay was deliberate on the prosecutor's part for purposes of tactical advantage, and that the delay was attributable to necessary investigation. (The delay was seven months from incident to indictment.) *See*, also, *United States v. Davis*, 487 F.2d 112 (5th Cir. 1973), *cert. denied*, 415 U.S. 981, 94 S.Ct. 1573, 39 L.Ed.2d 878 (1974), [11 months from bank robbery to first indictment; no showing of substantial prejudice, no prosecutorial overreaching]. The Circuit has always demanded that the prejudice demonstrated by defendant (if any) be actu-

al; it has reversed as error a decision by a trial judge who, rather than weighing evidence of actual prejudice, took judicial notice of the effect of the passage of time and death of witnesses on a given case "accept[ing] speculative and disputed allegations and label[ling] them actual prejudice." *United States v. McGough*, 510 F.2d 598, 604 (5th Cir. 1975). *See*, also, *United States v. Butts*, 524 F.2d 975 (5th Cir. 1975).

In a very recent case, that court has indicated that it will henceforth apply the two-part *Marion* test. *United States v. Duke*, 527 F.2d 386, 388, 390 (5th Cir. 1976). Since the *Duke* case involved a delay of only five days, however, it may not serve as a proper index of what might be the Fifth Circuit's reaction to an exceedingly long, intentional delay by Government with minimal evidence of actual prejudice to the defendant.

F. *Sixth Circuit*—There is a perceptual change in the Sixth Circuit's interpretation of the *Marion* decision, even though the court claims that its recent decisions are in line with earlier ones. Specifically, in *United States v. Giacalone*, 477 F.2d 1273 (6th Cir. 1973), the court stated that the "general rule" was that in the absence of intentional government delay, actual prejudice (to the defendant) must be shown. In that case, no evidence of government delay for tactical or harassment reasons was presented and other evidence did not demonstrate prejudice. In *United States v. Alred*, 513 F.2d 330 (6th Cir. 1975), the court now states that *Giacalone* stands for a finding of due process violation only when unexplained delay *and* actual substantial prejudice is demonstrated (the implication being that the Government has no obligation to account for knowing, unjustified delay).

On the question of actual prejudice, federal courts in the Sixth Circuit, as elsewhere, demand more than broad, general allegations of faded memories and non-specific hardships. *See, e. g., United States v. Shafer*, 384 F.Supp. 480 (N.D.Ohio 1974).

---

**3.** The court subsequently found no evidence of deliberate delay and, upon balance, an insuffi-

cient demonstration of actual prejudice to the defendant's defense.

G. *Seventh Circuit*—The Seventh Circuit, in a line of cases following its decision in *United States v. White*, 470 F.2d 170 (7th Cir. 1972), has consistently indicated it would require both a showing of prosecutorial intent *and* actual prejudice to the defendant. In *White*, having found insufficient prejudice demonstrated, the court did not reach the question of the Government's causing the delay for its advantage. *Cf. United States v. Ingram*, 477 F.2d 236 (7th Cir. 1973). An indictment filed 56 months after the alleged offense, and within four months of the limitations period, was upheld when the defendant in *United States v. Ricketson*, 498 F.2d 367 (7th Cir. 1974), *cert. denied*, 419 U.S. 965, 95 S.Ct. 227, 42 L.Ed.2d 180 (1974), failed to claim his trial was prejudiced by the delay or that the Government intentionally caused the delay. (In fact, the Government claimed to have learned of the offense only one year before bringing the indictment.) The court affirmed the denial of the motion to dismiss because *neither* ground was proved. In contrast, the court was less perturbed by the 34 month delay in *United States v. Joyce*, 499 F.2d 9 (7th Cir. 1974), since the case was very complex and the transcript was "voluminous."

The district courts within the Seventh Circuit are undoubtedly correct in surmising that the circuit court will be loath to find cause to dismiss indictments where the delay is minimal and non-purposeful or where the delay, though extensive, is attacked with only conclusory allegations. *Barrezueta v. United States*, 404 F.Supp. 5 (N.D.Ill.1975); *United States v. Picciurro*, 408 F.Supp. 1055 (E.D.Wis.1976). The circuit court has not closed the door, however, to an argument that a delay is so unreasonable and so prejudicial, even though within the limitations period, as to require dismissal of an indictment. *United States v. Cowsen*, 530 F.2d 734, 737 (7th Cir. 1976).

H. *Eighth Circuit*—The circuit court early indicated that minimal delays in indictment, highly speculative allegations of prejudice and an absence of government intent to delay made dismissal of indict-

ments inappropriate. *United States v. Atkins*, 487 F.2d 257 (8th Cir. 1973); *United States v. Rucker*, 496 F.2d 1241 (8th Cir. 1974). *Cf. Kartman v. Parratt*, 397 F.Supp. 531 (D.Neb.1975).

Equally clear, however, has been the court's awareness that there always exists a potential for extraordinarily abusive delay. While asserting the use of a two-prong *Marion* test, the court in *United States v. Jackson*, 504 F.2d 337 (8th Cir. 1974), *cert. denied*, 420 U.S. 964, 95 S.Ct. 1356, 43 L.Ed.2d 442 (1975), stated:

> Since we prefer to view the due process claim as one involving a balancing process, we hesitate to say that prejudice could never be presumed in an outrageous case of unjustified delay.

504 F.2d at 339, n. 2. In the context of a discussion of the Government's use of informants in drug cases, the court stated further:

> However, when the government chooses to continue the use of a particular informant and delay the indictment of an individual already suspected of an offense, it must recognize and respect the suspect's 'accelerating need to know that . . . he [is] ultimately going to be charged with having committed a [certain] crime at a certain time and place.' [citing] *Ross v. U.S.*, 121 U.S.App.D.C. 233, 349 F.2d 210, 213 (1965).

504 F.2d at 340. While the drug cases are the subject of a particularly sensitive time factor (see D.C. Circuit cases discussed below, part K), the Seventh Circuit does seem prepared to hold the prosecution responsible for unjustifiably extended delays in seeking indictments. This was most clearly demonstrated in *United States v. Barket*, 530 F.2d 189 (8th Cir. 1976), in which a pre-indictment delay of 47 months (for which the defendant was not responsible) was held to have materially prejudiced the defendant's case. "Obvious" prejudice to defendant's case (witnesses now deceased or unable to recall events) coupled with government neglect satisfied the *Marion* test, even on a two-pronged theory. The court indicated clearly that it recognized there was con-

siderable evidence suggesting prosecutorial misconduct (the alternative finding of the district court) but that it chose to rest its holding on the delay issue alone.

I. *Ninth Circuit*—The Ninth Circuit appears to have elected the alternate theories approach to the *Marion* decision. In *United States v. Erickson,* 472 F.2d 505, 507 (9th Cir. 1973), the court described the defendant's burden as one of proving:

> such a delay as will result in actual prejudice to the conduct of the defense *or* it must appear that the delay was an intentional one for the purpose of gaining a tactical advantage over the defendant *or* to harass him. [Emphasis added.]

As with other circuits, the Ninth Circuit has found insufficient an allegation of· "mere dimming of memories" or of possible°assistance that a missing witness might have rendered to the defense. *United States v. Galardi,* 476 F.2d 1072 (9th Cir. 1973). Equally ineffective is a complaint about a minimally delayed indictment, without more. *United States v. Ducharme,* 505 F.2d 691 (9th Cir. 1974). With a case of considerable complexity and magnitude, greater time to assemble and verify evidence is properly assumed by the Government to be reasonable, absent defendant's demonstration that the length of time actually prejudiced the defense, *or* was a form of harassment *or* was an "intentional ploy of the prosecution to gain a tactical advantage." *United States v. Manning,* 509 F.2d 1230 (9th Cir. 1974).

J. *Tenth Circuit*—In *United States v. MacClain,* 501 F.2d 1006 (10th Cir. 1974), the Tenth Circuit rather clearly elected the two-prong interpretation, holding that there would be no violation of Fifth Amendment due process rights absent both a demonstration of actual prejudice and showing of a purposeful design by Government to achieve a tactical delay. Since the case involved a complex securities/mail fraud scheme, the court found that a 39 month pre-indictment delay was not unreasonable when the need for extensive and careful organization and preparation of the case was evident. (Being reasonable, the Government's actions were not for purposes of tactical delay.) A more recent case, *United States v. Villano,* 529 F.2d 1046 (10th Cir. 1976), concerned questions of delay (from a February 1971 indication of "possible" violations of law to a January 1974 indictment) and prejudice (destruction of telephone records which might have been useful for impeachment purposes). Finding the impeachment value minimal and no "excessive delay" demonstrated, the circuit court affirmed the trial court's denial of defendant's motion to dismiss.

K. *District of Columbia Circuit*—The District of Columbia Circuit court has developed a special line of cases applying *Marion* to delays in indictments in drug cases when the Government is purposefully attempting to protect undercover agents involved with other cases. *Ross v. United States,* 121 U.S.App.D.C. 233, 349 F.2d 210 (1965), and its "progeny" have held that the potential for prejudice to the defendant's case in drug offenses is greater than in other situations, as both the drug users and their contacts are likely to forget activities and conversations more easily than would other individuals. The cases are also clear examples of governmental intent to delay for "tactical" reasons (investigations of other cases). Among the more recent cases in this line is *United States v. Jones,* 173 U.S. App.D.C. 280, 524 F.2d 834 (1975), emphasizing that the *Ross* approach is not an absolute one.

Among the non-drug cases, the court has indicated that it will follow the two-part *Marion* test. When a crime is complex (in theory and/or number of participants) some delay is acceptable, particularly when minimal, such as less than a year, and allegations of prejudice must cite more than general dimming of memories and loss of evidence. *United States v. Bridgeman,* 173 U.S.App.D.C. 150, 523 F.2d 1099, 1112 (1975).

It should also be noted that none of the reported cases dealt with a defendant who had been given official notice by the United States Attorney that he was under investigation, or that he would be indicted. Al-

derman was first contacted by the prosecution in June 1973 and was informed in September 1973 that an indictment against him was imminent. That indictment was returned approximately 34 months later. In the meantime, frequent discussions were held between attorneys for the Government and the defendant, but no indictment was returned. As an attorney, defendant is entitled to no greater rights than non-attorneys who may be under investigation by the prosecution. Nor does he forfeit any of those rights because of his vocation.

## II. APPLICATION OF PRINCIPLES OF UNITED STATES v. MARION TO THE CIRCUMSTANCES OF THIS CASE

Having reviewed the opinions of those federal courts who have analysed and applied the *Marion* test, it seems clear that the Supreme Court's guidelines would, under compelling factual circumstances, support a dismissal of an indictment on the single ground of intentional prosecutorial delay. The Supreme Court has called upon federal judges to exercise "delicate judgment" in accommodating the sound administration of justice to the rights of the defendant to a fair trial. Such individualized decision-making of necessity implies a sliding scale: length and effect of delay must be balanced with purpose or intent for delay; a judge's duty to safeguard a defendant's due process rights must be tailored to avoid inappropriate intrusion in the areas properly assigned to prosecutorial discretion. A judge must be mindful of the societal determination, embodied in statutes of limitation, that a period of years will, in most cases, permit the efficient and organized presentation of cases for judicial decision while minimizing the burden of those vulnerable to accusation. But *Marion* teaches that the limitations period does not encompass all of defendant's due process rights guaranteed by the Fifth Amendment of the United States Constitution. *Marion* may be properly read to suggest that the 38 month delay in that case had not been demonstrated to violate the due process clause because defendant had neither alleged and proved actual prejudice *nor* made

a showing that the Government had delayed intentionally for tactical reasons or for purposes of harassment. 404 U.S. at 325, 92 S.Ct. 455 [Paragraph 2 of Part IV of the opinion]. There is no indication in *Marion* that the delay for purposes of gaining tactical advantage over a defendant is restricted to tactical advantage at trial; similarly, there is no requirement of *malice* in the delay, *i. e.,* desire to harm a defendant because of feelings of ill-will, a possibility covered in the "harassment" term. The courts recognize that a case might arise in which purposeful government delay *without* justification of on-going investigations or complexity of subject matter would be outrageous, *e. g., United States v. Mallah, supra* (2d Cir.); *United States v. Heinze, supra* (D.Del.); *United States v. Cowsen, supra* (7th Cir.); *United States v. Jackson, supra* (8th Cir.). Many of the cases cited herein rely heavily on the factual circumstances surrounding long pre-indictment delays: either a continuous active investigation of a complex situation, or ignorance on the part of the government prosecutors that a crime may have taken place some years before, *e. g., United States v. Ricketson, supra* (7th Cir.).

The facts of this case require a finding that the Government deliberately, intentionally and continuously delayed the presentation to the federal Grand Jury of the case against R. Bruce Alderman from a period in the fall of 1973 until May 1975 and again from that date until June of 1976, a period of more than 30 months. As evidence of this, the defendant has presented uncontroverted statements from the lawyers representing him and the Assistant United States Attorneys handling his case, as well as the former United States Attorney, George Beall, that defendant Alderman was first told (during the summer of 1973) that he would be indicted for perjury and then (in September 1973) that he would be indicted in the "anti-trust" matter with which he had been involved with James Nolan.

Former Assistant United States Attorney Russell T. Baker, Jr., testified that he had

been "mad" at Alderman and had told him that he (Alderman) had "lied" before the Grand Jury investigating N. Dale Anderson and that he would be indicted for perjury. Baker testified he knew about the anti-trust matter by late August 1973, that the case was to be handled by Assistant United States Attorney Ronald S. Liebman, with Baker attending subsequent bargaining and negotiation meetings and that the major investigations of the 1973–74 period involved Spiro T. Agnew and Anderson. Baker said that these cases were taking up "all the time" and that he felt that the perjury case against Alderman would be weak. Baker recalled meetings in 1974, with defendant's lawyers who were involved with "others under scrutiny" and that Alderman would be discussed at the end of meetings, or briefly during the meetings. Baker stated that at the time he left the United States Attorney's Office (Fall 1974), Alderman's lawyer continued to insist there was no case against his client and Baker admitted there were "difficulties" in pursuing the case against Alderman; involvement of the Chicago and New York law firms "chew[ed] up time" and another investigation had begun. Baker stated his personal feeling at the time was that they should "indict it [Alderman] or get rid of it." On cross examination, Baker admitted that his discussion of imminent indictment (in 1973) was partly in hope that Alderman would come in and "crack"—give information. Baker indicated he thought it was a "simple" case, that receipt of illegal money "doesn't sound very complicated to me," that although there were "some" files to go through, Nolan had said that the Chicago firm knew nothing about the arrangement. Baker admitted that he felt that Alderman's resignation from the Bar would have been a satisfactory disposition, but there was no "official" position during the time he was in the Office of the United States Attorney.

Assistant United States Attorney Ronald S. Liebman indicated that he was involved with Alderman from August 1973 when Alderman's counsel met with the United States Attorney (see affidavits of Beall and Mosner) on the anti-trust matter. Liebman issued a subpoena for documents which were received in the fall of 1973 and Nolan's files were then in the possession of the prosecution. He indicated that everyone was "very busy" with the Anderson case in the end of 1973 and beginning of 1974, and recalled a meeting in early 1974 between the United States Attorney and defendant's attorney when the latter pleaded against the threatened indictment and suggested resignation from the Bar as an appropriate compromise. Liebman recalled that he and the other members of the prosecutorial team agreed that Alderman's case couldn't be allowed to "just go away" and in June 1974 told defendant's attorney that defendant had better come back with a story that matched what they had heard from others or he would be indicted. Liebman recalled that Nolan testified before the special Grand Jury in May 1975, but gave no reason why an indictment was not sought from that body before it expired on December 31, 1975. He also acknowledged there was a January 1976 phone call from defendant's lawyer following a pre-Christmas 1975 phone call from the prosecutor's office in which was promised a January 1976 indictment if resignation didn't ensue. While Liebman stated he did not recall that Skolnik made the call at his request, the internal memoranda (provided by the Government for the Court's inspection) reveal a memorandum from Skolnik to Liebman dated 12/22/75 saying that Skolnik had called pursuant to Liebman's request and had told Sullivan he was calling to "remind him that Alderman would be indicted in early January."

The internal files also include several memoranda dated May 21 and June 6, 1974 referring to meetings between counsel for the defendant and the prosecutors. These memoranda are best summed up in the language of the May memorandum stating the "office (prosecution) has to indict and will do so soon."

This Court has alluded to these internal memoranda because they support assertions in the affidavits of defendant's lawyers,

and because they were used by the prosecutors to assist their testimony. The unavoidable conclusion is that the prosecution was, in May 1974, making unqualified assertions that the case against Alderman was complete. At the August 30, 1976 hearing Assistant United States Attorney Liebman candidly told this Court that the Alderman case was a "documents" case and that even the testimony of James Nolan was superfluous, making the alleged inconsistencies in Nolan's statements to the prosecutors and the first Grand Jury irrelevant. The Government thus made it clear that the delay from May 1974 to June 1976 was unjustified by any facts *within* the Alderman case. The inference thus becomes unavoidable that the delay was tactical, intentional and designed to either force Alderman into an acceptable plea or cause him to divulge information on other matters pertaining to Baltimore County. The attitude of the prosecution is also revealed in Assistant United States Attorney Skolnik's description of the case as a "mosquito" case. The case was in the active files and ready for indictment by spring 1974. While the prosecutors involved themselves with other cases of higher priority this case hung around, a source of irritation every time they were forced to consider it. Occasional notice was taken: there are January 6, 1975 and July 12, 1975 memoranda from Liebman to Skolnik (and on the later date, to United States Attorney Finney as well) reminding that a decision "still" had to be made. When the 1975 Grand Jury expired without an indictment and defendant's lawyer indicated that Alderman, "broken" in spirit, was willing to resign from the Bar with a public statement, there was another three month delay before the proposed stipulation was produced. Once again, the delay was caused by unavailability of prosecutors and inattention to the case. The statement, received by Alderman's lawyer on April 5, 1976 was rejected by Alderman, through his attorney, on May 14, 1976 and the Grand Jury convened and indicted Alderman on June 3, 1976. The Government has not challenged Alderman's assertion that by June 1976 he had waited 34 months to be indicted for his involvement in the Nolan fee-splitting case.

The evidence relating to the development of this prosecution leads to the inescapable conclusion that the pre-indictment delay, at least from May 1974 to June 1976, was an intentional action on the part of the prosecution, unexplained other than by tactical motives related to this investigation or to the higher priority given by the prosecutors to other investigations. It thus most nearly resembles the factual situation in *United States v. Harmon, supra* [Part I–C of this opinion]. It should be stated that the Court does not attribute any malevolent purpose or attitude of the prosecution toward defendant. Nor does the Court intend to indicate approval of defendant's assertions of the strength of his defense, the purity of his motives or the legality of his activities.[4] But the Court cannot condone the unjustified delay in seeking an indictment, a delay that must be an affront to the expectations of all citizens that prosecutors will serve, not threaten, the public. If the reason for such delay is the scarcity of prosecutors and the abundance of culpable public officials, the answer is found not in shortchanging the due process rights of individuals but rather in adequately funding and staffing prosecutorial offices.

Recognizing that this Circuit has not been called upon to rule on whether *Marion* should be interpreted as posing alternative forms of due process violation, as has been held by another district court in this Circuit, *Hamilton v. Lumpkin, supra* [Part I–D of this opinion], or a dual requirement, it is appropriate to comment on defendant's showing of prejudice to his case attributable to the delay. Alderman's lawyer offered as Exhibits 9, 10 and 11 (to the motion to dismiss the indictment on grounds of violation of Fifth Amendment due process rights) statements made by three men who

---

4. These are matters more properly the subject of investigation by the appropriate Bar association.

were members of the Baltimore County Council at the time the issue of hiring the Chicago law firm arose in 1967. All three deny all recollection of what was said by defendant in introducing the matter, how the discussion may have proceeded and what their own or any other members' comments may have been. Defendant alleges that without the testimony of these men he is deprived of any evidence, other than self-serving comments he might make *if* he were to take the stand at his own trial, of the manner in which he exercised his role as legal advisor to the County in a matter for which he has been indicted. Since any decision of a jury would rely heavily on credibility, Alderman's inability to produce any witnesses to testify to the length and detail with which he alleges he presented the antitrust matter would be specifically harmful. Obviously Alderman cannot prove that these three men would have remembered better in 1973 or 1974 than they do now. *Marion* cannot be read as requiring a defendant to prove the unknown.

In addition to the specific prejudice for the loss of credibility testimony, Alderman has sworn to his own loss of memory for "certain facts, especially those related to those occurrences many years ago." [Alderman affidavit, page 8.] Standing alone, this "evidence" is of the conclusory sort found wanting by the Court in *Marion* and in many of the subsequent cases reviewed earlier in this opinion. However, Alderman has also alleged, possibly as a result of conversations between his lawyer and either Nolan's lawyer or Nolan himself, that Nolan, presumably the Government's prime witness, at least for purposes of securing the indictment, no longer recalls when it was that he had conversations with defendant Alderman and N. Dale Anderson. Alderman asserts that Nolan is sufficiently uncertain whether the discussions about fee-splitting occurred before or after the Chicago law firm was hired (specifically, whether in 1967 or 1969) so as to be "unavailable" to him as a defense witness. Alderman also asserts that as a result of governmental pressure, Nolan may have translated his indecision about events into

statements that Nolan knew the Government wanted on the record. The recorded transcript of Nolan's testimony to the special Grand Jury in May 1975 was reviewed to consider defendant's motion to dismiss for abuse of Grand Jury process. Alderman has made an allegation of specific prejudice which is substantiated by the testimony of Nolan before the Grand Jury: specific demonstrations of Nolan's failure to remember important aspects of conversations with Anderson in 1967, Tr. 52, 54, 57; important aspects of conversations with Alderman in 1967, Tr. 58, 59–60–61–62–63–64–65–66, and 1969, Tr. 82, in which Nolan expresses difficulties or inability to remember content and date of conversations.

Having found specific prejudice, alleged and proven by the defendant, woven into the fabric of prosecutorial delay, resulting in a denial of defendant's Fifth Amendment rights, the teachings of *Marion* require dismissal of the indictment.

For the aforegoing reasons, it is this 13th day of December, 1976, by the United States District Court for the District of Maryland, ORDERED:

That the motion to dismiss the indictment be, and the same is, hereby GRANTED.