UNITED STATES of America

v.

Stephen HARMON, Jr., d/b/a Automatic Weapons Division and George Fassnacht.

Crim. No. 689–71.

United States District Court,
D. New Jersey.

Aug. 7, 1974.

Furman Templeton, Asst. U. S. Atty., Newark, N. J., for plaintiff.

A. Charles Peruto, Philadelphia, Pa., for defendants.

OPINION

WEBER, District Judge (Sitting by Special Assignment).

The defendant George Fassnacht was indicted on October 18, 1971 on sixteen (16) counts of having aided, assisted, counseled and advised in the preparation of false and fraudulent documents relating to the transfer of firearms in violation of 26 U.S.C. § 7206(2). The events forming the subject of the indictment occurred from November 30, 1965 up and through June 1966. He was brought to trial in February 1973 and after a trial of several days the jury was unable to agree and a mistrial was declared.

Prior to trial the defendant moved to dismiss because of prejudicial delay, not because of pretrial delay after bringing the indictment, but delay in bringing the indictment long after the government had sufficient knowledge of the transactions and the persons connected with it. The defendant claims that this delay was extremely prejudicial to his ability to present a defense, served no proper purpose of the government in the interests of justice, and violates his rights to due process at law and a fair trial under

the 5th Amendment. The pretrial motion was denied without prejudice to its renewal before the trial judge.

We believe that the motion may more properly be considered post-trial, when the evidentiary basis of defendant's claims are made apparent on the record.

The facts of prejudice established by the record and advanced by the defendant are as follows:

(1) The delay prior to indictment and after the alleged incidents is almost six years. 'The indictment was within the six year statute of limitations. This delay in notice to an accused that he must stand trial for an act six years prior thereto creates an inherent risk of an unfair trial.

(2) The government's investigation was conducted in 1968. The government agent interviewed the named co-defendant on October 7, 1968, and the defendant on December 16, 1968. Another participant in the transactions was indicted on May 14, 1970.

(3) William Caley, a witness to the transactions in question who was indicted on May 14, 1970, died December 7, 1970.

(4) Defendant's mother, Mrs. Dorothy Fassnacht, with whom he resided, and who was a witness to various matters relating to the custody and transfer of the weapons, died in 1967.

(5) Dr. Fillinger, who was present at the initial transaction involving the purchase of the weapons, and who participated in their transfer, was not indicted and was able to testify for the government at trial with immunity because of the bar of the Statute of Limitations against prosecution for the self-incriminating testimony which he gave.

(6) The effect of the delay on the memory of the government's principal witness, the co-defendant Stephen Harmon, Jr., whose recollection of dates and events was uncertain, and whose initial statement to the government deliberately omitted the presence of Dr. Fillinger at the transaction, in order to cover up for him. The government learned of Fillin-

ger's participation in a second interview with Harmon in 1968 and interviewed Fillinger in January 1969.

(7) The effect of delay on defendant's ability to establish an alibi defense, to establish a statute of limitations defense, and to secure documentary evidence essential to his defense.

The testimony revealed at the trial showed that the government was in full possession of all of the facts necessary to institute prosecution by 1969. It had the statement of the principal government witneses Harmon, implicating the defendant. It had the defendant's statement witness Harmon, implicating the from Harmon, implicating Dr. Fillinger. It had a statement from Dr. Fillinger which implicated defendant. It is the transaction between Harmon, Fillinger and Fassnacht, in November 1965, which forms the basis of the indictment. There were four witnesses to that event, Harmon, Mrs. Harmon, Fillinger and the defendant. The government had interviewed all of them by 1969. It had possession of some of the weapons in 1968.

■ The legal standard for delay in prosecution resulting in an unfair trial is a balancing test.

"To accommodate the sound administration of justice to the rights of the defendant to a fair trial will necessarily involve a delicate judgment based on the circumstances of each case." United States v. Marion, 404 U.S. 307, 325, 92 S.Ct. 455, 465, 30 L. Ed.2d 468 [1971].

While the Court in *Marion* noted that the law has provided other mechanisms to guard against *possible* as distinguished from *actual* prejudice resulting from the passage of time, the statute of limitations, it has cautioned a limitation to this argument:

"[I]t is appropriate to note here that the statute of limitations does not fully define the appellees' rights with respect to the events occurring prior to indictment." United States v. Marion, cit. supra, p. 324, 92 S.Ct. p. 465.

We note here that the government had almost reached the statutory bar of the legal protection against *possible* prejudice, it delayed the bringing of the indictment until approximately one month prior to the absolute bar of the statute.

We note that in *Marion* the Court was dealing only with *potential* prejudice, no actual trial having taken place, and with a period of three years between the event and the filing of the indictment. No actual prejudice was alleged or proved.

> "Events of the trial may demonstrate actual prejudice, but at the present time appellees' due process claims are speculative and premature." United States v. Marion, cit. supra, p. 326, 92 S.Ct. p. 466.

*Marion* has been cited as establishing two prerequisites to require dismissal for pre-indictment delay; prejudice to the defendant, and intentional action by the government to gain some tactical advantage over defendant. We do not find that to be the holding of the case. The Court noted that there was no showing of intentional delay by the government in the case, and recited that the government conceded that if these two elements were shown the Due Process Clause would require dismissal. We return to the Supreme Court's admonition that the sound administration of justice required a delicate judgment based on the circumstances of each case.

Pre-indictment delay was considered in United States v. Dukow, 453 F.2d 1328 [3rd Cir. 1972]. The court rejected the argument for dismissal because the proof of substantial prejudice to the defendants was lacking.

We believe that the element of substantial prejudice is evident here. When we consider that in face of such prejudice the jury failed to agree, we may readily conclude that had not the defendant been so delayed, he might well have been able to produce evidence which would have resulted in his acquittal. This is particularly true with respect to Dr. Fillinger, whose testimony

against defendant would make him subject to a charge as an accessory, but who was never prosecuted and who testified under the protection of the statute of limitations.

The government has shown no reason for the delay on its part. Its investigation was sufficient in 1969. No new leads covering the critical actions of the defendant in November 1965 were developed. While the government did spend considerable time thereafter in tracing all of the weapons involved in the subsequent transfers, this was not essential to its case against defendant, where the essential act of aiding and advising in the filing of false registration forms was completed before November 30, 1965.

There was no undercover investigation under way. The principals were all interviewed, and some later transferees were indicted. The defendant was always available, he was working for the United States Government, and he was brought back from overseas for interviews in 1968.

And there always stands evident the unexplained failure of the government to proceed against the third party participant in the critical transaction of November 1965 at any time, so that now, free from peril, he throws the onus of the November transaction on the defendant.

In the lack of any reason advanced by the government for the delay, we may infer that there was an intent by the government to secure a tactical advantage over the defendant. Such an intent can rarely be shown otherwise. In United States v. Emory, 468 F.2d 1017 [8th Cir. 1972], it was shown that a pre-indictment delay was excused by the government's need to complete a far-reaching undercover investigation of illegal drug traffic. In United States v. Parish, 468 F.Supp. 1129 [D.C.Cir. 1972] the government's delay was occasioned in part by the effort to locate the missing defendant.

In view of the extreme difficulty of defendant in proving by competent evi-

1352

dence an intent by the government to secure tactical advantage by the delay, we can only adopt the adverse inference from its conduct, particularly in view of its failure to come forward with any reason to explain the delay.

We conclude that the delay of almost six years in bringing the indictment in this case prejudiced defendant's right to a fair trial, and is not counterbalanced by any legitimate interest of the government to excuse the delay.

The motion to dismiss will be granted.