UNITED STATES of America, Plaintiff,

v.

COUNTRYSIDE FARMS, INC., et al., Defendants.

Crim. A. No. 75–76.

United States District Court, D. Utah, C. D.

Jan. 7, 1977.

Gary R. Spratling, C. Robert Disharoon, Irene S. Holmes, Dept. of Justice, San Francisco, Cal., for plaintiff.

Ricardo Ferrari, Salt Lake City, Utah, for Countryside Farms, Inc. and R. Kent Christofferson.

Clark W. Sessions and Herschel J. Saperstein, Salt Lake City, Utah, for Egg Products Co.

Harold Christensen, Jonathan M. Berge, and Michael Carlston, Salt Lake City, Utah, for Olson Farms, Inc.

Robert W. Brandt, Salt Lake City, Utah, for Snow White Egg Co.

Lowell N. Hawkes, Pocatello, Idaho, for Gilbert T. Cochran.

## MEMORANDUM OPINION AND ORDER

WINNER, Chief Judge, Sitting by Designation.

This memorandum opinion and order rules on what I think are all except one of the motions in this case pending as of January 5, 1977. Many of the rulings contained herein were made orally during the January 5, 1977, hearing, but one ruling has been delayed to permit the filing of another brief by defendants and another was postponed

to permit an in camera inspection requested by defendants.[1] The motions are:

1. Government Motion for Clarification of January 20, 1976, order.

2. Government Motion for Return of Documents. [The government substituted this motion for an earlier motion asking reconsideration of an order regarding the document depository.]

3. Government Motion for Discovery (from defendant Snow White) under Rule 16(b).

4. Government Amended Motion for Discovery (from defendants, Countryside, Christofferson, Egg Products, Olson Farms and Cochran) under Rule 16(b).

5. Defendants' Motion to Dismiss for Denial of Speedy Trial as guaranteed by the Sixth Amendment. [I treat this motion as raising Fifth Amendment grounds.]

6. Defendants' Motion to Permit Inspection of Grand Jury Minutes.

7. Defendants' Motion to Provide Record of Jurors Concurring in the Indictment.

8. Motion to Dismiss under Rule 12. This Motion is argued in four parts:

 (a) Intentional delay in return of indictment.

 (b) Violation of Fifth and Sixth Amendment rights.

 (c) Intentional interference with right to counsel.

 (d) Double jeopardy.

9. Motion to Dismiss under Rule 16(d)(2).

10. Motion to Suppress Evidence.

11. Motion for Further Particulars.

12. Defendants' Motion to Dismiss for Denial of Speedy Trial on grounds other than Fifth and Sixth Amendment grounds.

[1]. If counsel for any party think that there are any unresolved matters which are ripe for determination and which I have not covered either orally during the hearings, or in this order, counsel are requested to notify me.

### Government Motion for Clarification

The government says that the order of January 20, 1976, if interpreted as defendants arguably could say it should be, would be impossible to comply with. The government says that under paragraph one of the order it has supplied all evidence known to the government concerning meetings, telephone calls, and actions having to do with claims of monopoly and allocation of territories. The government says that it has not and that it cannot realistically be asked to supply the details of every daily price which prevailed during the period of the alleged conspiracy, nor can it say what the daily prices would have been had no agreement existed. It is urged that to attempt to supply requested information would require a compilation of 14,000 prices in addition to the 1,500 prices supplied to defendants which the government intends to use at trial. The government represents that the requested information which has not been supplied will not be used at time of trial, and it has agreed to be bound by this representation.

In approaching this motion and the companion motions, it is to be remembered that the amendments to Rule 16, F.R.Cr.P. had been in effect less than two months on January 20, 1976, and that even now there is not much case authority explaining the amendments. *United States v. Nobles* (1975), 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141, which discusses Rule 16, F.R. Cr.P., had then been but recently published, and the Advisory Committee notes to the Rule 16 amendments were not readily available for study. Amended Rule 16(a)(1)(C) is to me quite understandable. It says:

"*Upon request of the defendant, the government shall permit the defendant to inspect and copy or photograph books, papers, documents,* photographs, tangible objects, buildings or places, or copies or portions thereof, *which are within the possession, custody or control of the government, and which are material to*

*the preparation of his defense or are intended for use by the government as evidence in chief at the trial, or were obtained from or belong to the defendant."*

The Advisory Committee explained:

"Subdivision (a)(1)(C) gives a right of discovery of certain tangible objects under the specified circumstances. Courts have construed the old rule as making disclosure discretionary with the judge. (Cf. *United States v. Kaminsky,* 275 F.Supp. 365 (S.D.N.Y.1967); *Gevinson v. United States,* 358 F.2d 761 (5th Cir. 1966); and *United States v. Tanner,* 279 F.Supp. 457 (N.D.Ill.1967). The old rule requires a 'showing of materiality to the preparation of his defense and that the request is reasonable.' The new rule requires disclosure if any one of three situations exists: (a) the defendant shows that disclosure of the document or tangible object is material to the defense, (b) the government intends to use the document or tangible object in its presentation of its case in chief, or (c) the document or tangible object was obtained from or belongs to the defendant. . . .

"Limiting the rule to situations in which the defendant can show that the evidence is material seems unwise. It may be difficult for a defendant to make this showing if he does not know what the evidence is. For this reason subdivision (a)(1)(C) also contains language to compel disclosure that if the government intends to use the property as evidence at the trial or if the property was obtained from or belongs to the defendant. . . ."

■ The Committee note discusses the applicability of *Brady v. State of Maryland* (1963), 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215, to Rule 16, and, understandably, the Committee concluded that "*Brady* material" must be furnished. The Supreme Court said in *Brady* that the prosecution must furnish all "evidence favorable to an accused . . . where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." What is evidence favorable to an accused, material to either guilt or punishment, is a question which has plagued prosecutors for almost 15 years, and the only course to be followed by a prudent prosecutor is to supply any evidence which is even arguably favorable to a defendant on the question of guilt or on the question of punishment. That it may be burdensome to supply such evidence is no excuse, and it is unimportant if the government fails in good faith to supply exculpatory evidence. The duty to disclose exculpatory evidence is absolute, and the government must furnish to defendants all evidence known to government counsel or known to any government agent participating in the preparation or prosecution of the case which "is favorable to an accused (and is) material either to guilt or punishment." In deciding what evidence should be supplied, the prosecution must resolve all doubts in defendants' favor.

As to "non-*Brady* material", I think that Rule 16(a)(1)(C) is clear. The government must afford defendants an opportunity *to inspect and copy* all documentary evidence under the control of the government which:

(1) Is intended to be used by the government as evidence in the prosecution's case in chief; or,

(2) Was obtained from or belongs to a defendant.

[3] By way of explanation, I interpret the portion of the rule making mention of documents "material to the preparation of a defense" to have reference to "*Brady* material", and that seems to be the way the Advisory Committee intended the language. I interpret "documents to be used by the government in its case in chief" to include documents which will be marked and offered in evidence by the government, plus documents which will be relied on or referred to in any way by any witness called by the government during its case in chief. I think that within the meaning of Rule 16, documents "were obtained from or belong to" a defendant if they were obtained from or if they are the property of a defendant, or if they were obtained from or were the

property of any employee, agent, or professional consultant of a defendant.

■ I do not read Rule 16(a)(1)(C) to demand that the government supply defendants with any material unless it falls within one of the foregoing categories,[2] and I do not read it to require the government to make studies, tabulations or computations which it does not intend to use at trial. With this delineation of my interpretation of Rule 16(a)(1)(C), I do not think that it is necessary to talk at length about the "work product" rule in criminal cases. If it were, there is nothing I should or could add to *United States v. Nobles* (1976), 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141. Whether "work product" applies both during discovery and trial [see Justice Powell's opinion] or whether it is limited to discovery [see Justice White's opinion] is unimportant here. I am ruling on a discovery motion, and both Justice Powell and Justice White think that "work product" applies to discovery in a criminal case, and the government is not required to disclose "work product."

In summary, then, I order disclosure of:

1. Any evidence favorable to an accused material to either the guilt or innocence of a defendant or material to punishment.
2. Any documentary or tangible evidence which the government intends to offer or rely on in its case in chief.
3. Any documentary or tangible evidence obtained from or belonging to a defendant, a defendant's agents, employees or consultants.

If the government does this, it will have met its burden under the order of January 20, 1976, as I understand the order and as I understand the requirements of Rule 16(a)(1)(C) and other requirements of law.

### Government Motion for Return of Documents

■ Pursuant to various discovery orders heretofore entered in this case, the government has delivered thousands of documents to the offices of Van Cott, Bagley, Cornwall & McCarthy, Esq. as an agreed document depository. The dates of delivery, and a general description of the delivered material are:

```
January 12, 1976 16 boxes of documents
January 16, 1976 2 envelopes of documents
January 19, 1976 4 boxes of transcripts of proceedings
 in the private civil antitrust case
January 21, 1976 1 box of exhibits used in that case
January 28, 1976 1 envelope plus 5 boxes of supporting
 documents.
```

The government says that some of this material was purchased by it from various sources and some of it was prepared at government expense by an independent expert. The government doesn't now complain about having been ordered to deliver the material. It just wants it back, and I cannot read Rule 16(a)(1)(C) to say that the defendants have any right to retain the papers. The new rule gives a defendant a right to inspect and copy. It doesn't provide for a conveyance or transfer of title to defendants of property belonging to the prosecution. The rule requires that defendants be permitted "to inspect and copy or photograph" the documents, and any sensible reading of the rule requires that a reasonable time be afforded to accomplish the inspection, copying or photographing. I think that eleven months is time enough to go through a mass of documents even as formidable as this. I am sure that most of the material—e. g. 100 volumes of transcripts in the related civil case—came as no surprise to and required no extensive independent review by defense counsel. The

---

**2.** With the 1970 amendment to 18 U.S.C. § 3500 in mind, this conclusion is inescapable

in light of the mention of that section in Rule 16(a)(1)(D), (2).

government is entitled to a return of the documents in the very near future. If defendants have any tag-end copying they wish to do, they should finish it by 8:00 o'clock a. m., January 19, 1977, because it is ordered that is when the material so long ago deposited in the agreed document depository shall be available to be picked up by the government. If later inspections are needed by defense counsel, the government has agreed to make the documents available.

### Government Motion for Discovery and Government Amended Motion for Discovery

■ These two motions are identical except that they are addressed to different defendants. They are made under Rule 16(b)(1)(A), and they present no problems. The rule is express:

"If the defendant requests disclosures under subdivision (a)(1)(C) or (D) of this rule, upon compliance with such request by the government, the defendant, on request of the government, shall permit the government to inspect or copy or photograph books, papers, documents, photographs, tangible objects, or copies or portions thereof, which are within the possession, custody, or control of the defendant and which the defendant intends to introduce as evidence in chief at the trial."

The rule as enacted is less favorable to the government than were the recommendations of the Advisory Committee. The Committee [and the A.B.A.] thought the rule should be sui juris, but Congress limited the disclosure requirements to cases in which the defendant had requested disclosure under subdivisions (a)(1)(C) or (D) of the rule. I am sure that the views of the Advisory Committee and the American Bar Association were rejected by Congress because of concern over Constitutional problems, although *Williams v. Florida* (1970), 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446, and *Wardius v. Oregon* (1973), 412 U.S. 470, 93 S.Ct. 2208, 37 L.Ed.2d 82, dispose of many of the arguments attacking constitu-

tionality. A general discussion of the subject is to be found in 2 *Wright, Federal Practice & Procedure* (Criminal) §§ 255–256, and *United States v. Milano* (1971), 10 Cir., 443 F.2d 1022, mentions that there might be constitutional problems under the Rule's original concept. Here, though, defendants have triggered the government's right to discovery, and I have found that on the record made, the government has complied with defendants' Rule 16(a)(1)(C) requests. That being so, the government is entitled to discover the material it wants to see, but I think that it is reasonable to order that defendants must make the information available to the government not later than February 14, 1977, instead of February 8, 1977, as requested. It is going to take the government a few days to put on its case, and the prosecution doesn't need defendants' documents as soon as defendants need the government's. Moreover, there probably won't be all that many defense exhibits.

The Government's Motion for Discovery and the Government's Amended Motion for Discovery are granted except as to the date. It is ordered that not later than February 14, 1977, the defendants shall permit the government to inspect and copy all books, papers, documents, photographs, tangible objects or copies of portions thereof which are in the possession, custody or control of defendants, or of any employee, agent or professional consultant of a defendant which defendants intend to offer in evidence at trial during the presentation of defendants' case in chief. This order includes exhibits which will be offered in evidence by defendants and documents which will be relied on or referred to in any way by any witness called by defendants in the presentation of their case in chief. This is nothing more nor less than the reciprocal of the order earlier herein entered against the government, and reciprocity is the spirit of Rule 16. Additionally, Rule 16(b)(1)(B), (2) is the reciprocal of Rule 16(a)(1) (D), (2), and that which has been said concerning "work product" is fully applicable to disclosures which must be made by defendants. [Since the order is limited to material de-

fendants want to put in evidence, the "work product" limitation is probably meaningless, but it is a part of Rule 16.]

*Defendants' Motion to Dismiss for Denial of Speedy Trial As Guaranteed by the Fifth and Sixth Amendments*

I have talked at length on this subject before. *United States v. Hay* (1974), D.C. Colo., 376 F.Supp. 264. To large degree, what I said there is applicable here. The delay here is shorter than it was in *Hay*. Hay couldn't earn a living during the 17-month post-indictment wait, but there is no similar showing made in this case. There is no showing here that the government has tried to obtain unfair tactical advantage. The government did seek appellate review, but it did so in good faith, and it won. Delay subsequent to the Tenth Circuit opinion resulted from defendants' efforts to have the Supreme Court rule on the case. Some delay has resulted from defendants' failure to return the government's papers, and defendants have not shown that they have been prejudiced by the delay. No one can argue that any criminal anti-trust case is anything other than "a serious complex conspiracy charge," rather than a case resembling one charging "an ordinary street crime." Judge Breitenstein said in *United States v. Merrick* (1972), 10 Cir., 464 F.2d 1087:

> "In *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101, the Court considered the speedy trial provision in its application to a murder conviction in a trial held more than five years after the arrest of the accused and found no constitutional deprivation. In so doing, the Court approved a balancing test in which the conduct of both prosecution and accused is weighed on an ad hoc basis. Although not excluding other factors, the court identified four as pertinent. They are, 'Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.'
>
> . . .
>
> "Thus we have a total delay of less than two years, a reasonable explanation of the necessity for reindictment, a defend-

ant who at all times was released on an unsecured bond, a prompt disposition of defense motions, and no request by defendant for trial. We are left with the claim of prejudice to the defendant. This involves both Fifth and Sixth Amendment rights . . ..

> "*Marion* suggests two criteria for determination of whether due process has been violated by delay in prosecution. They are whether the delay 'caused substantial prejudice to appellees' rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused.' 404 U.S. at 324, 92 S.Ct. at 465. The record contains nothing which suggests that the government delayed to secure tactical advantage. The question is whether defendant had a fair trial."

I cannot rule on a motion to dismiss that the government intentionally delayed to secure tactical advantage or that defendants have been substantially prejudiced. I think that the defendants can be afforded a fair trial. I shall certainly do my best to see to it that the trial is fair, but if I can't accomplish this result, I will look again to any claimed violation of defendants' constitutional rights on timely motion for mistrial, motion for new trial, or post-trial motion to dismiss.

In *United States v. Hay* (1975), 10 Cir., 527 F.2d 990, Judge Hill said:

> "As noted 70 years ago by the Supreme Court: 'The right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances. It secures rights to a defendant. It does not preclude the rights of public justice.' *Beavers v. Haubert*, 198 U.S. 77, 87, 25 S.Ct. 573, 49 L.Ed. 950. Under the circumstances of this case, we hold appellant was not denied a speedy trial. We believe this holding is consistent with the right of appellant and the rights of public justice."

■ Pre-indictment delay is something not protected by the Sixth Amendment. *United States v. Marion* (1971), 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468. If, at

**1158**

time of trial, the narrow tests of *Marion* are met, I will look at the matter again under its principles, but, as I read the opinion, *Marion* holds that this case should not be dismissed for pre-indictment delay.

■ Under the circumstances of this case, I do not think that defendants have been denied a speedy trial contrary to the requirements of the Sixth Amendment. Fifth Amendment protections recognized in *Marion* are for determination at or after trial, and under all the circumstances, I think that the scheduled trial is consistent with the rights of defendants and that it is essential that the case be tried if the rights of the public are to be protected.

Defendants' bell cow case is *United States v. Harmon* (1974), D.C.N.J., 379 F.Supp. 1349, but I don't think that the case stands for what defendants say it does, and Judge Weber, who authored the opinion, is diametric to Judge Breitenstein as to what *Marion* holds. Defendants say that *Harmon* stands for the proposition that a case can be dismissed before trial for pre-indictment delay. The trouble is that in *Harmon* there was a hung jury after a full trial. The motion to dismiss was not granted until after trial, and it was granted with this quotation from *Marion:*

> "Events of the trial may demonstrate actual prejudice, but at the present time appellees' due process claims are speculative and premature."

■ Judge Weber said, "We note that in *Marion* the Court was dealing only with *potential* prejudice, no actual trial having taken place. . . . " Whether defendants' Fifth Amendment rights have been violated is something I shall reach after trial, because I think this is what *Marion* mandates.[3] To me, *Harmon* stands for this proposition, but, to avoid future uncertainty, I disagree with and I shall not follow Judge Weber's analysis of *Marion.* He said (379 F.Supp 1351):

"*Marion* has been cited as establishing two prerequisites to require dismissal for pre-indictment delay; prejudice to the defendant, and intentional action by the government to gain some tactical advantage over defendant. We do not find that to be the holding of the case. . . . ."

The quotation from Judge Breitenstein's opinion in *United States v. Merrick, supra,* says that *Merrick* is one of the cases citing *Marion* as standing for the proposition Judge Weber rejects in *Harmon.* In any post-trial hearing, I shall follow my understanding of what the Tenth Circuit has held.[4]

*Motion to Inspect Grand Jury Minutes*

■ Defendants have asked that this motion be not acted upon. Especially under the provisions of the 1970 amendment to 18 U.S.C. § 3500, there is no way I can order pretrial disclosure of grand jury testimony. Congress said:

"In any criminal prosecution brought by the United States, no statement . . . made by a government witness (other than the defendant) shall be subject to subpoena, discovery or inspection until said witness has testified on direct examination in the trial of the case . . . . "The term 'statement' . . . means: . . . "A statement, however taken or recorded or a transcription thereof, if any, made by said witness to a grand jury."

Congress has spoken, and I am bound. To delay production of the grand jury testimony until time of a trial is a right the government has but government counsel in this case understand full well that if the government were to exercise fully its rights, the trial would drag. To avoid this, counsel have offered to provide the "statements" 30 days in advance of trial, and they have thus offered in a spirit of cooperation more than I could order.

---

**3.** *United States v. Lovasco* (1976), 8 Cir., 532 F.2d 59, cert. granted, 429 U.S. 884, 97 S.Ct. 233, 50 L.Ed.2d 164, may prove me wrong.

**4.** See, also, *United States v. MacClain* (1974), 10 Cir., 501 F.2d 1006, *United States v. Redmond* (1977), 10 Cir., 546 F.2d 1386.

*Motion to Provide Record of Jurors Concurring In The Indictment*

 Counsel acknowledge that this is a somewhat unusual motion, and they have agreed that it shall be resolved on the basis of an in camera inspection made by me. The motion rests on the provisions of Rule 6, F.R.Cr.P., having to do with the requirements for a grand jury quorum and specifying the number of grand jurors who must concur in an indictment. I have examined in camera the record of grand jurors concurring in the indictment in this case [Form D.C. 53 (rev. July 1954)] and it discloses that more than 16 grand jurors were present at the time the indictment was returned and that more than 12 voted to indict each defendant. I believe that all of the requirements of Rule 6, F.R.Cr.P. were met. The record of Grand Jurors Concurring will be marked as a court exhibit, to be sealed and made a part of the record on appeal.

*Motion to Dismiss Under Rule 12*

(a) *Intentional Delay in Return of Indictment.*

(b) *Violation of Fifth and Sixth Amendment Rights.*

The arguments made by defendants in support of these claims I have already covered, and I do not discuss them any more.

(c) *Intentional Interference With Right To Counsel.*

 I have trouble following this argument. It seems to rest on a complaint that government counsel recommended a particular law firm in Salt Lake City to represent plaintiffs in the companion civil case and that the recommended law firm cooperated with the government in supplying information helpful to the government. I am troubled if a government lawyer recommended a particular lawyer or law firm to file a civil suit on behalf of someone seeking help from the Department of Justice. I do not say that there was any actual impropriety on the part of government lawyers, but I do say that if such a recommendation was made, wagging tongues are likely to contribute to further deterioration in public confidence in the government. I question the wisdom of Department of Justice recommendation of a single lawyer or law firm to represent a suppliant to the Justice Department. Ugly gossip will inevitably result. I do not dismiss on this ground, but, surely, the circumstances surrounding and the reasons for referral of law business by government counsel to selected private lawyers are facts which may be material on a post-trial inquiry into alleged violation of defendants' Fifth Amendment rights.

(d) *Double Jeopardy.*

 Again, I don't understand defendants' argument. It is true that in the civil case, treble damages were recovered, but that doesn't mean that if defendants stand trial in this case they will have been twice in jeopardy. Treble damages are punishment, but treble damages aren't criminal punishment. I reject defendants' argument of double jeopardy, and, indeed, defendants don't press it very strongly.

*Motion Under Rule 16(d)(2) To Dismiss*

 Defendants want the indictment dismissed because the government hasn't furnished the material it was ordered to furnish. Much of the steam was taken out of this argument during the January 5, 1977, hearing with the government's assurances as to what it has available to furnish. [I did at that time order, and I again order that the files of all anti-trust attorneys assigned to this case or assigned to Utah since 1967, including the files of Mark Anderson, be searched and that pertinent information be provided defendants, including any information concerning the recommendation for employment of the government selected private law firm. Of course, as discussed earlier, *Brady* material must be supplied.] The remainder of the arguments on this point I have covered earlier in the course of the discussion of the government's motion for clarification, and the motion to dismiss is denied.

*Motion to Suppress Evidence*

 Defendants devote a page of their brief to this motion. · They want to suppress all evidence obtained by the government from defendants and their lawyers because they weren't told that they were the "focus of a criminal investigation", and,

> "Because of the Government's involvement with counsel for the plaintiffs during the civil case, and the reasonable reliance defendants placed upon Governmental Acts and representations, that the dispute was not a criminal matter, the evidence must be suppressed in the event the indictments are not dismissed."

I have raised a quizzical eyebrow over the way it is said the lawyers for plaintiff in the civil case were named by Department of Justice lawyers, but I know of nothing wrong with cooperation between government counsel and independently selected counsel for plaintiffs in a civil anti-trust case. Most assuredly, neither defendants nor their lawyers were entitled to a *Miranda* warning before they talked to government counsel. Now it is settled that a potential defendant is not entitled to such a warning when he appears before a grand jury. *United States v. Mandujano* (1976), 425 U.S. 564, 96 S.Ct. 1768, 48 L.Ed.2d 212. The surrounding circumstances of the conversations and whether the defendants were improperly lulled into a sense of security may be open for consideration on post-trial hearing on alleged violation of *Marion* Fifth Amendment *principles,* but there is no right to suppression of trial evidence under any case cited to or found by me.

*Motion For Further Particulars*

 This motion has been discussed under the section of this opinion dealing with Government's Motion for Clarification and it was talked about during the hearing of January 5, 1977. The government has supplied or it has agreed to supply all of the information to which defendants are reasonably entitled. I recognize that defendants must be afforded fair opportunity to rebut testimony concerning alleged meetings, and that it is surely in the interests of economy of time that they be told the place, date and persons present at every alleged meeting, as well as the alleged subject matter discussed, alleged agreements reached and the substance of what was said by whom. This detail need not be provided by bill of particulars. Under 18 U.S.C. § 3500, it need not be provided until the witness testifies. Happily, the government has agreed to provide the information 30 days before trial, but should there be an inadvertent slipup, defendants will be protected by allowing them reasonable time to rebut any testimony which catches them by surprise. In my judgment, the government has volunteered full cooperation to defendants and to the court, and I am confident that if any information is not supplied 30 or more days before trial, the failure will be oversight rather than intentional. With the government's assurances, the Motion for Further Particulars is denied. The information now sought is § 3500 material; it is not something to be formally pleaded by bill of particulars, and the government doesn't stand on all of its § 3500 rights.

*Defendants' Motion to Dismiss for Denial of Speedy Trial on Grounds Other Than Fifth and Sixth Amendment Grounds*

Defendants requested more time to file a brief in support of this motion. The brief has not been received, and the motion will be disposed of later.

Trial shall commence in Ogden, Utah, at 9:00 o'clock a. m., on February 28, 1977. The number of extra peremptory challenges to be allowed, if any, will be resolved after it is determined how many defendants elect to go to trial. Defense counsel are to advise on or before January 24, 1977, if there is objection to use of a jury panel selected from the Ogden, Utah, jury wheel. If there is no such objection by that date, trial will be to a jury selected from the jury wheel used for that division of the Court.

If there are other matters requiring a ruling or a hearing, or if such matters arise between now and February 28, 1977, coun-

sel are requested to advise me promptly of the need for ruling and/or hearing.