**UNITED STATES of America**

v.

**Paul BAXT.**

**Criminal No. 99–75.**

United States District Court,
D. New Jersey.

Oct. 26, 1999.

Faith S. Hochberg, United States Attorney, Mark R. Winston, Assistant United States Attorney, Newark, NJ, for U.S.

John Voorhees, Isaacson, Rosenbaum, Woods & Levy, P.C., Denver, CO, for Defendant, Paul Baxt.

## OPINION

ORLOFSKY, District Judge.

This case presents the vexatious and troublesome question of when and under what circumstances an indictment must be dismissed for "preindictment delay." On February 19, 1999, Defendant, Paul Baxt ("Baxt"), was indicted for misrepresenting his financial assets on loan applications submitted to Summit Trust Company ("Summit Trust") in violation of 18 U.S.C. §§ 1014 and 2.[1] *See* Indictment (filed Feb. 19, 1999). The last of the activities for which Baxt was indicted occurred in May, 1989, nearly ten years before the indictment was finally obtained on February 19, 1999. *See id.* Baxt now brings a motion to dismiss this indictment for preindictment delay. *See* Def.'s Mot. to Dismiss for PreIndictment Delay (filed Apr. 17, 1999).

For the reasons set forth below, I shall deny Baxt's motion to dismiss for preindictment delay because he has failed to demonstrate both that: (1) the delay was intentional; and (2) he has suffered actual prejudice as a result of the delay.

## I. Factual Background

On February 22, 1989, Baxt submitted a letter to Summit Trust attaching a copy of Schedule B of his 1987 federal income tax return. *See* Aff. Dr. Michael Peter Weissberg, Ex. 25 (filed Apr. 27, 1999). Baxt tendered this tax information apparently in the hope that Summit Trust would issue a loan that could be used by a partnership (of which Baxt was a member) to renovate the Grove Mercantile office building located in Jersey City, New Jersey. *See id.*, Exs. 6, 16. Baxt was to be the guarantor of the applied-for loan. *See id.*, Ex. 6. The tax form indicated that that Baxt had received $301,678 in income from an account with Charles Schwab & Co. in 1987 *See id.*, Ex. 25.

The Government alleges, however, that Baxt earned only $678 from his Charles Schwab brokerage account that year. *See* Indictment at 2. Moreover, the Government claims that Baxt "altered" Charles Schwab statements in May, 1989, further misrepresenting his financial assets. *See* Aff. Dr. Michael Peter Weissberg, Ex. 6. Baxt does not deny that he submitted financial statements over-valuing his financial assets. *See id.*, Ex. 16. He argues instead that he did not have the requisite *mens rea* to support a conviction for filing false loan applications. *See id.* Specifically, he contends that in March and May, 1989, he suffered from organic brain disease, bipolar disorder, and Multiple Sclerosis—a cocktail of brain dysfunctions that resulted in his making grandiose representations about his financial worth. *See* Aff. Dr. Michael Peter Weissberg ¶ 3, Exs. 2–5,

---

1. Section 1014 states, in relevant part:
 Whoever knowingly makes any false statement or report, or willfully overvalues any land, property or security, for the purpose of influencing in any way the action of ... any institution the accounts of which are ensured by the Federal Deposit Insurance Corporation ... shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.
 18 U.S.C. § 1014 (1994).
 Section two states, in pertinent part: "Whoever commits an offense against the United States ... is punishable as principle."
 18 U.S.C. § 1014 (1994).

16. There is also evidence of cocaine and alcohol abuse on the part of Baxt at that time. *See id.*, Exs. 2–4.

The focus of Baxt's current motion centers on the events that transpired between May, 1989, and the filing of the indictment against him approximately ten years later. The investigation that initially uncovered Baxt's alleged wrongdoing was conducted by the Federal Bureau of Investigation in 1991. *See id.*, Exs. 17–18. Baxt retained Mr. Voorhees ("Voorhees"), the attorney who currently represents him, in February, 1992. *See id.*, Ex. 19.

The following year-and-a-half was marked by regular exchanges between Voorhees and Mark R. Winston, Esq., ("Winston") counsel for the United States. During this time the Government requested and received Baxt's medical records, concluded on the basis of those records that it did not need to obtain an independent medical examination of Baxt, invited Baxt to plead guilty, and made several representations that an indictment would be sought sometime in early 1993. *See id.*, Exs. 7, 11–14, 20–22, 24. Baxt, while initially resistant to pleading guilty, ultimately offered to negotiate a plea and to surrender voluntarily if negotiations failed and an indictment was filed. *See id.*, Exs. 13, 20.

Surmising that an indictment was imminent, Voorhees sent a letter to Winston on April 8, 1993, requesting that Baxt be permitted to make a statement to the Grand Jury. *See id.*, Ex. 22. Winston responded in a letter dated April 14, 1993, that Baxt would be permitted to testify before the Grand Jury if he waived his Fifth Amendment privilege against self-incrimination and answered questions put to him by the Government. *See id.*, Ex. 14. Moreover, he would be allowed to make a statement to the Grand Jury, but the contents of that statement would have to be reviewed and approved by the Government prior to his appearance. *See id.* Baxt and the Government could not agree on what terms would govern Baxt's appearance before the

Grand Jury, and the matter was ultimately brought before the Honorable John W. Bissell of the District of New Jersey, who issued an order permitting Baxt to testify. *See* Order (dated July 13, 1993). Baxt's local counsel, Thomas G. Roth, Esq., wrote a letter, dated June 22, 1993, to Winston to coordinate the arrangements for Baxt to appear before the Grand Jury. *See* Aff. Dr. Michael Peter Weissberg, Ex. 28.

That was the last word in this case until October 29, 1997, over four years later, when the Government contacted Voorhees to make arrangements for Baxt to appear before the Grand Jury. *See id.*, Ex 16. Voorhees claims that at the time he received the Government's telephone call, he had not spoken to his client in over four years, had to search to find him. He subsequently discovered that Baxt was bankrupt, divorced, settled into a forced retirement because of his mental infirmities, dependant on a fixed income, and living in the Carribean. *See id.* The Government claims that four-year hiatus in this case from July, 1993, to October, 1997, resulted from the large caseload at the United States Attorney's Office in this District, the greater priority given other cases, and multiple reassignments of this case among various Assistant United States Attorneys. *See* Affirmation of Mark R. Winston ¶¶ 4–9, 11, 19–21 (filed May 17, 1999).

On four occasions between December 5, 1997, and October 9, 1998, Baxt signed affidavits tolling the ten-year statute of limitations to allow for further investigation by the Government into Baxt's claimed medical condition and to prevail upon the Government to refrain from seeking an indictment. *See* Aff. Dr. Michael Peter Weissberg, Exs. 6, 16; Letter of John Voorhees, Esq. (dated Mar. 2, 1998) (appended to Government's Resp. to Def.'s Pre–Trial Mots. (dated May 14, 1999)). The Government obtained the indictment against Baxt on February 19, 1999, after Baxt refused to agree to toll the statute of limitations for a fifth time. *See id.*, Ex. 16;

Indictment. It seems that Baxt ultimately decided not to appear before the Grand Jury on the medical advice of his physicians. *See id.* ¶ 6; Government's Resp. to Def.'s Pre–Trial Mots. at 3.

On April 17, 1999, Baxt filed a motion to dismiss the indictment against him for preindictment delay. *See* Def.'s Mot. to Dismiss for Pre–Indictment Delay. I will now consider this motion.

## II. Discussion of Legal Standard Governing Preindictment Delay

■ To succeed on a motion to dismiss for preindictment delay, a defendant must meet a heavy burden—a burden not satisfied in this case. The statute of limitations constitutes the primary safeguard against the filing of stale criminal charges. *See United States v. Lovasco,* 431 U.S. 783, 789, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977); *United States v. Marion,* 404 U.S. 307, 322, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); *United States v. Ismaili,* 828 F.2d 153, 167 (3d Cir.1987). Within the statute of limitations period, a court may dismiss an indictment for pre-accusation delay if it finds the delay to be so oppressive that it violates the Due Process Clause of the Fifth Amendment. *See Lovasco,* 431 U.S. at 789, 97 S.Ct. 2044; *Marion,* 404 U.S. at 324, 92 S.Ct. 455; *Ismaili,* 828 F.2d at 167. A violation will be found if the defendant shows that: (1) the Government intentionally delayed bringing the indictment in order to gain some tactical advantage over him; and (2) this delay caused the defendant to suffer actual prejudice. *See Lovasco,* 431 U.S. at 789–90, 97 S.Ct. 2044; *Marion,* 404 U.S. at 325, 92 S.Ct. 455; *Ismaili,* 828 F.2d at 167. I will discuss each prong of this standard in turn.

### A. *Intentional Delay To Gain a Tactical Advantage*

The Government claims that it did not intentionally delay seeking the indictment in this case. *See* Affirmation of Mark R. Winston, Esq. ¶ 20. Rather, it argues that the delay resulted from "the exigencies of other matters being handled by the Assistant U.S. Attorneys assigned to the Baxt matter." *Id.* ¶ 21; *see also* Government's Resp. to Def.'s Pre–Trial Mots. at 12. Baxt counters that the four-year delay between Judge Bissell's Order allowing Baxt to address the Grand Jury and the filing of Baxt's indictment by the Government can only be explained by bad faith on the part of the Government. *See* Def.'s Consolidated Mem. Supp. Pretrial Mots. at 9 (filed Apr. 27, 1999).

■ Initially, I find there has been no showing of intentional delay for the period predating Judge Bissell's July, 1993, order or the time after October, 1997, when the Government reestablished contact with Baxt. It is well-settled that prosecutors enjoy broad discretion in determining when to seek an indictment and that this discretion empowers prosecutors to delay obtaining an indictment for investigative purposes. *See Lovasco,* 431 U.S. at 796, 97 S.Ct. 2044; *Ismaili,* 828 F.2d at 166–68; *United States v. Cannistraro,* 800 F.Supp. 30, 54 (D.N.J.1992) (Lechner, J.). Consequently, prosecutors have the discretion to delay an indictment even after they have assembled sufficient evidence to prove guilt beyond a reasonable doubt. *See Lovasco,* 431 U.S. at 792–96, 97 S.Ct. 2044. Courts have declined to intrude upon this broad discretion in part because it insulates prosecutors from the pressure to "resolv[e] doubtful cases in favor of early and possibly unwarranted prosecutions" and allows the "[g]overnment to give full consideration to the desirability of not prosecuting in particular cases." *Lovasco,* 431 U.S. at 793–94, 97 S.Ct. 2044. To impinge on the discretion of prosecutors to delay an indictment to investigate more fully the merits of filing formal charges would "subordinate the goal of orderly expedition to that of mere speed." *Lovasco,* 431 U.S. at 795, 97 S.Ct. 2044; *Ismaili,* 828 F.2d at 168.

The evidence submitted by both Baxt and the Government reveals that the Government's conduct prior to Judge Bissell's

order did not rise to the level of offending the Due Process Clause of the Fifth Amendment. During this period, the Government initiated plea negotiations. *See* Aff. of Michael Peter Weissberg, Ex. 12. It also requested and received Baxt's medical records in order to evaluate the merits of his medical claims. *See id.*, Exs. 7, 11, 24. Despite the Government's statements that an indictment was looming and that there was little Baxt could do by way of medical evidence to persuade the Government not to seek an indictment, *see id.*, Exs. 11–13, 20, 22, it is clear that the Government in fact engaged in the type of investigation and negotiation that falls squarely within the scope of a prosecutor's discretion when deciding whether or not to prosecute a case. The Government's delay prior to Judge Bissell's order of July 13, 1993, was justified and not designed to gain some tactical advantage.

Similarly, the Government's conduct after it reestablished contact with Baxt in October, 1997, did not run afoul of any Constitutional or federal right. During this period, Defendant Baxt repeatedly signed affidavits tolling the applicable ten-year statute of limitations in the hope that investigation by the Government into his medical difficulties would induce the Government to refrain from seeking an indictment against him. *See* Aff. Dr. Michael Peter Weissberg, Exs. 6, 16; Affs. (dated Feb. 27, 1998, and Oct. 9, 1998) (appended to Government's Resp. to Def.'s Pre–Trial Mots.). I find that the Government's actions during this period were not violative of Due Process, especially since Baxt waived his first line of defense against preindictment delay—the statute of limitations—in order to permit the prosecution to engage in that type of investigation which, under Due Process principles, is firmly within its right to perform.

■ The four-year interval between the filing of Judge Bissell's order on July 13, 1993, and October, 29, 1997, when the Government reestablished contact with Baxt, presents a more difficult question.

There is no evidence that the Government was engaged in any type of investigation whatsoever during this period. Indeed, by the time Judge Bissell issued the order concerning Baxt's right to address the Grand Jury in July, 1993, it seemed that the Government was firmly committed to indicting Baxt, signaling that the Government believed its preindictment investigation was complete. Moreover, in the papers submitted to this Court by the Government in opposition to Baxt's motion to dismiss, the Government essentially concedes that no investigation took place during that time, maintaining instead that the large case load shouldered by Assistant United States Attorneys in this District prevented the Government from investing any energy in the Baxt matter at all. *See* Affirmation of Mark R. Winston ¶¶ 4–9, 11, 19–21; Government's Resp. to Def.'s Pre–Trial Mots. at 12.

■ Even assuming this to be true, I find that under the law of this Circuit, Baxt has failed to show intentional delay on the part of the Government. The Third Circuit has interpreted the first prong of the *Marion–Lovasco* test to require a showing of prosecutorial bad faith. *See United States v. Sebetich,* 776 F.2d 412, 430 (3d Cir.1985). In *Sebetich,* three defendants were indicted for multiple counts of bank robbery nearly five years after they committed their offenses. *See id.* at 429. Their indictment was delayed a year-and-a-half from the close of the investigation in that case because confusion existed as to whether state or federal authorities would prosecute the case, and the case "just sort of fell between the chairs." *Id.* at 429. The Third Circuit held that the failure on the part of prosecuting authorities to exercise diligence in keeping track of that case did not rise to the level of bad faith. *See id.* at 430.

Similarly, the preindictment delay in this case was the product of a lack of diligence on the part of the Government and not some improper motivation. In opposition to this motion, the Government

has relied upon the affirmation of Winston, one of the Assistant United States Attorneys who has handled this case. Winston's affirmation describes in detail the commitments and administrative distractions that turned the Government's attention away from this matter, allowing the case to "fall between the chairs." *See* Affirmation of Mark R. Winston, Esq. ¶¶ 4–9, 11; *see also* Government's Resp. to Def.'s Pre–Trial Mots. at 12. Moreover, bad faith seems an unlikely reason for the delay given the circumstances of this case. The Government stated repeatedly in its interactions with defense counsel that although it had requested and reviewed Baxt's medical records, it was very skeptical that there was any merit to Baxt's claims of mental infirmity. *See* Aff. of Dr. Michael Peter Weissberg, Exs. 11, 14, 22; Affirmation of Mark R. Winston, Esq. ¶¶ 13, 17–18. The Government was so skeptical, in fact, that it did not have Baxt's medical records reviewed by an independent medical authority. *See* Aff. of Dr. Michael Peter Weissberg, Exs. 11, 14, 16, 22. As Baxt admits, this case is also a relatively straightforward "documents case," depending little on the memories of witnesses or on the preservation of evanescent evidence. *See* Def.'s Consolidated Mem. Supp. Pretrial Mots. at 10–11.

Given the Government's oft-stated beliefs concerning Baxt's health and the nature of this case, it is hard to imagine what motive the Government could have had to delay the indictment intentionally in this case. In *Cannistraro*, the court held that the defendants failed to show intentional delay by the Government even though several key witnesses died during the delay, because the defendants did not prove that the Government knew that the witnesses labored under life threatening illnesses at the time the Government delayed the indictment. *See Cannistraro*, 800 F.Supp. at 54. In this case, the Government was made aware of Baxt's alleged mental illness, however, there is ample evidence that the Government did not believe Baxt's illness to be genuine. *See* Aff. of Dr.

Michael Peter Weissberg, Exs. 11, 14, 22; Affirmation of Mark R. Winston, Esq. ¶¶ 13, 17–18. By not believing Baxt to be ill, the Government in this case effectively stands in the same position as it did in *Cannistraro* and similarly cannot be found to have delayed the indictment intentionally.

Baxt cites three cases to support his contention that the preindictment delay in this case was violative of Due Process, however, none is apposite. In *United States v. Harmon*, 379 F.Supp. 1349 (D.N.J.1974), the court found intentional delay on the part of the Government when it waited six years from the conclusion of an investigation to bring an indictment. *See id.* at 1350. Citing the difficulty inherent in proving intent, the court inferred intent from the Government's conduct. *See id.* at 1351. In that case, however, the Government offered no explanation for the delay, and the court's analysis turned on the Government's inability to provide a legitimate justification for the delay. *See id.* at 1351–52. In this case the Government *has* offered an explanation for the delay that refutes Baxt's allegations of bad faith.

Another of the cases cited by Baxt, *United States v. Alderman*, 423 F.Supp. 847 (D.Md.1976), is similarly distinguishable. The *Alderman* court found that the Government intentionally delayed bringing an indictment where the Government's explanation was similar to the one offered in this case: It claimed that the delay resulted from its commitment to the prosecution of other, higher priority cases. *See id.* at 857. Reliance on *Alderman* is misplaced, however, since evidence was presented in that case that was suggestive of improper motive. Indeed, the veritable "smoking gun" was present in that case: One of the Government prosecutors admitted that he hoped the defendant would "crack" as a result of the delay and divulge information that would be useful in other prosecutions. *See id.* at 856–57.

Finally, *United States v. Sabath*, 990 F.Supp. 1007 (N.D.Ill.1998), is completely inconsistent with the law of this Circuit. In that case, the court interpreted the Supreme Court's *Marion* and *Lovasco* opinions as permitting dismissal for preindictment delay on a showing of recklessness or negligence on the part of a prosecutor. *See id.* at 1017–18. In doing so, it recognized that the rule it adopted was at odds with the rule adopted in the majority of Circuits, including the Third Circuit, which requires the defendant to demonstrate that the delay was the result of bad faith on the part of the Government. *See id.* In jurisdictions that apply the bad faith standard, a heavy caseload and multiple reassignments of a case among prosecutors have been accepted as legitimate justifications for preindictment delay. *See e.g., United States v. Engstrom*, 965 F.2d 836, 839 (10th Cir.1992) ("a heavy and active criminal docket in [the United States Attorney's O]ffice with a consequent number of shifts of the case from one Assistant U.S. Attorney to another" were legitimate factors in delaying indictment); *United States v. Shaw*, 555 F.2d 1295, 1299 (5th Cir.1977) (United States Attorney's "allocation of manpower and assignment of priorities among investigations" justified preindictment delay); *United States v. Collamore*, 751 F.Supp. 1012, 1025–26 (D.Me.1990) ("less than diligent attention" on part of prosecutor justified delay in bringing indictment even if negligent); *United States v. Bouthot*, 685 F.Supp. 286, 298 (D.Mass.1988) (preindictment delay legitimate where caused by the "assignment of manpower, reflecting the priority of investigations established by the U.S. Attorney's office"); *United States v. Greenfield*, No. 84 Cr. 297, 1984 WL 853, at *2 (S.D.N.Y. Sept.11, 1984) (reassignment of case to different Assistant United States Attorneys "due to heavy caseloads or transfers to different divisions" justified preindictment delay); *United States v. Altro*, 358 F.Supp. 1034, 1037 (E.D.N.Y.1973)(delay "occasioned by a changing of the guard in the United State's Attorney's Office, coupled with a rapidly expanding caseload" not violative of Due Process).

Accordingly, I find that Baxt has not demonstrated that the preindictment delay in this case was the result of a deliberate, intentional ploy by the Government to gain a tactical advantage. By not alleging conduct that "violates those fundamental conceptions of justice which lie at the base of our civil and political institutions," *Lovasco*, 431 U.S. at 790, 97 S.Ct. 2044, Baxt has not made the showing required in order to prevail on his Due Process claim.

I note, however, that the delay in this case was clearly unfortunate. I recognize that the establishment of law enforcement priorities is an executive and not a judicial function. Moreover, the law vests prosecutors with broad discretion in deciding how to allocate prosecutorial resources. I am concerned, however, that prosecutors be diligent in the discharge of their duties. Although the delay in this case was not violative of Baxt's federal or Constitutional rights, it behooves the United States Attorney's Office in this District to manage its case load more efficiently.

■ Moreover, prosecutors should be aware that the burdens of their office, including heavy caseloads, do not grant them carte blanche to delay bringing an indictment. While the explanation in this case is sufficient, it is only barely so. In cases in other jurisdictions where it has been held that a heavy caseload constitutes a legitimate justification for preindictment delay, courts have often relied on additional factors in denying a defendant's motion to dismiss for preindictment delay. *See, e.g., Engstrom*, 965 F.2d at 839 (finding that the delay was caused in part by ongoing plea negotiations between the Government and the defendant); *Shaw*, 555 F.2d at 1299 (stating that preindictment delay was justified in part by the need for further investigation); *Collamore*, 751 F.Supp. at 1026–27 (holding that a "substantial portion" of the preindictment de-

lay in that case was justified by long-standing federal policy of not prosecuting a case prosecuted by state authorities); *Greenfield*, 1984 WL 853, at *2 (finding that delay was caused in part by the discovery of new evidence). I will not and cannot speculate as to what additional circumstances would defeat the "heavy caseload" defense offered by the Government in this case. I merely note that the Government should not view the result in this case as an invitation to mismanage its caseload with impunity in the future. It should be remembered that:

> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

*Berger v. United States*, 295 U.S. 78, 89, 55 S.Ct. 629, 79 L.Ed. 1314 (1935).

### B. *Actual Prejudice*

In light of Baxt's failure to show that the delay in this case was intentional, the discussion of the prejudice he alleges he suffered as a result of the delay need only be brief.

 A review of Baxt's moving papers reveals two arguments addressing actual prejudice—the first of which is best summed up in a letter sent by Voorhees to Winston on January 18, 1999, just weeks before Baxt's indictment:

> Twelve years have gone by since the events giving rise to the financial transactions that are under investigation. The records are old, the witnesses will be difficult to locate, and I am told, but have not confirmed, that the banks in question have been either sold or reorganized or both. The prosecution and the defense will be under extreme burdens to locate witnesses and review these old records. You can count on faded memories and the possibility that witnesses, including family members, will turn hostile given the length of time this case has taken to be investigated and the manner in which this case has been handled.

Aff. Dr. Michael Peter Weissberg, Ex. 16. In response, the Government argues that Baxt has not demonstrated the prejudice he would suffer at trial with sufficient specificity. *See* Government's Response to Defendant's Pretrial Motions at 14–15. I agree.

 The Supreme Court has held that generalized allegations of prejudice are not sufficient to substantiate a claim that Due Process rights have been violated. In *Marion*, the Supreme Court held that a three-year preindictment delay was not violative of Due Process:

> Appellees rely solely on the real possibility of prejudice inherent in any extended delay: that memories will dim, witnesses become inaccessible, and evidence be lost. In light of the applicable statute of limitations, however, these possibilities are not in themselves enough to demonstrate that appellees cannot receive a fair trial and to therefore justify the dismissal of the indictment. Events of the trial may demonstrate actual prejudice, but at the present time appellees' due process claims are speculative and premature.

*Marion*, 404 U.S. at 325–26, 92 S.Ct. 455. Courts have interpreted *Marion* to erect a stringent standard for showings of actual prejudice. In *United States v. United*

*States Gypsum Co.*, 550 F.2d 115 (3d Cir. 1977), for example, the defendants claimed that they were prejudiced when thirty-six of their potential witnesses died during an eight-year pre-indictment delay. *See id.* at 119. The Third Circuit held that the trial court was correct to deny the defendants' motion to dismiss for preindictment delay because the defendants did not demonstrate that the "deceased would have proffered testimony not merely cumulative of the evidence already at [their] disposal." *Id.* Similarly, in *Cannistraro*, the court concluded that the defendants in that case did not make a showing of actual prejudice, even though a number of their potential witnesses had died during a substantial pre-accusation delay, because the defendants did not establish that the witnesses' testimony would have been exculpatory or even when the witnesses died. *See Cannistraro*, 800 F.Supp. at 57. Indeed, a review of this Circuit's case law reveals that for a defendant to show prejudice as a result of preindictment delay, the defendant must demonstrate, with specificity, that the delay resulted in the loss of exculpatory evidence, whether testimonial or documentary, that is not merely cumulative of evidence available from other sources. *See Ismaili*, 828 F.2d at 168–69;

*Sebetich*, 776 F.2d at 430; *United States v. Kruckel*, 1994 WL 774645, at *22 (D.N.J. 1994) (Simandle, J.).[2]

Baxt falls far short of meeting the standard set out in these cases. Baxt has failed to identify with any specificity testimony or documents lost because of the preindictment delay in this case. He certainly has not demonstrated that any lost evidence, whether through the dimming of memories or the disappearance of documents, is material to his innocence or unavailable from other sources. Baxt's failure in this regard is particularly noteworthy because this is a relatively straightforward "documents case." Baxt has failed to identify specific prejudice despite the ostensibly finite number of relevant documents and witnesses involved. He relies "solely on the real possibility of prejudice inherent in any extended delay." *Marion*, 404 U.S. at 325–26, 92 S.Ct. 455. It is well-settled that this possibility is not sufficient to justify the dismissal of an indictment. *See id.*

■ The second of the Defendant's arguments is similarly unavailing. Baxt's counsel asserts that the prejudice suffered by Baxt is personal, i.e., that Baxt's physical and mental health deteriorated so

---

**2.** The holdings in these cases are in accord with the law of most jurisdictions. *See, e.g., United States v. A.X. Stokes*, 124 F.3d 39, 47 (1st Cir.1997) (holding that preindictment delay did not cause prejudice where potential defense witness disappeared because there was no evidence that witness could have been found if indictment was brought earlier); *United States v. Cornielle*, 171 F.3d 748, 752 (2nd Cir.1999) ("[Actual prejudice] is commonly demonstrated by the loss of documentary evidence or the unavailability of a key witness"); *Jones v. Angelone*, 94 F.3d 900, 908 (4th Cir.1996) ("When the claimed prejudice is the unavailability of witnesses ... courts have generally required that the defendant identify the witness ... demonstrate, with specificity, the expected content of that witness' testimony ... [and] show that the information the witness would have provided was not available from other sources"); *United States v. Crouch*, 84 F.3d 1497, 1518–23 (5th Cir.1996) (finding that actual prejudice was not suffered where documents were lost but some of the documents were not exculpatory, the defendants failed to show that some of the documents existed, and the defendants did not demonstrate that the information contained other documents was not available from other sources); *United States v. Rogers*, 118 F.3d 466, 475 (6th Cir.1997) ("The death of a potential witness during the pre-indictment period may demonstrate the requisite prejudice if the defendant can demonstrate that exculpatory evidence was lost and could not be obtained through other means"); *United States v. McMutuary*, 176 F.3d 959, 964 (7th Cir.1999) ("[T]he absence of cumulative testimony cannot, as a matter of law, result in actual prejudice"); *United States v. Scoggins*, 992 F.2d 164, 167 (8th Cir.1993) (holding that death of potential alibi witness did not cause actual prejudice where defendant failed to "relate the substance of the testimony of the missing witness in sufficient detail" and to show that the witness's testimony was not available from other sources).

greatly during the course of the delay that he is no longer capable of mounting an effective defense. Baxt's counsel states,

> Dr. Baxt's cognitive functions and memory are demonstrably impaired, because of his [Multiple Sclerosis], cerebral dysfunction, and bipolar illness. Dr. Baxt's extensive medical records show memory loss as does Dr. Weissberg's evaluation of Dr. Baxt. With the enormous passage of time since the alleged offenses occurred, medical records show a steady decline in Baxt's health. Dr. Baxt has produced ample evidence of his steady decline in health that demonstrate [sic] his body and mind have been continuously and seriously ravaged by [Multiple Sclerosis] and bipolar illness. This prejudice is manifestly obvious that the passage of time has seriously and irreparably impacted his ability to mount an effective defense.

Def.'s Consolidated Mem. Supp. Pretrial Mots at 13. In his affidavit, Dr. Weissberg concludes that Baxt suffers from Multiple Sclerosis and bipolar disorder and that these maladies have resulted in memory loss, cognitive impairment, poor judgment, and grandiose behavior. *See* Aff. of Michael Peter Weissberg ¶¶ 3, 6.

■■■■ These assertions, however, do not meet the threshold requirements for a showing of actual prejudice. The standard to be applied when assessing prejudice suffered by a defendant because of a defendant's loss of memory or incapacity is the same as that applied when assessing the prejudice suffered by the loss of any other evidence: The defendant must demonstrate, with specificity, that his mental loss or incapacity will prevent him from offering exculpatory evidence that is not merely cumulative of evidence available from other sources. *See United States v. McDougal,* 133 F.3d 1110, 1113 (8th Cir. 1998) ("Even if McDougal's medical condition had impaired his memory, the mere loss of or impairment of memories does not constitute actual prejudice for the purposes of the Due Process Clause"); *United*

*States v. Comosona,* 848 F.2d 1110, 1114 (10th Cir.1988) (Comosona's alleged memory loss not prejudicial because "the absence of cumulative testimony cannot, as a matter of law, result in actual prejudice"); *United States v. L'Allier,* 838 F.2d 234, 238 (7th Cir.1988) ("L'Allier's unsupported allegation of memory loss therefore does not constitute the requisite substantial prejudice required to prove a due process violation"); *United States v. Stone,* 633 F.2d 1272, 1274 (9th Cir.1979) (Stone's claim of impaired memory was insufficient to show actual prejudice because Stone did not "demonstrate how that loss [was] prejudicial to him"); *United States v. Cowsen,* 530 F.2d 734, 736–37 (7th Cir.1976) ("If the limitation period for prosecution were measured by the length of the defendant's memory for routine events, few crimes could be presecuted [sic]"); *United States v. Schoeneman,* 893 F.Supp. 820, 822 (N.D.Ill.1995) ("conclusory allegation" by defendant about deterioration of health and eyesight not sufficient to show actual prejudice). In *United States v. Ford,* Crim. A. No. 92–161, 1992 WL 36872, at *9 (E.D.Pa. Dec. 4, 1992), the court held that a claim by the defendant that preindictment delay rendered him unable to reconstruct the events surrounding his alleged offenses or to recall or locate witnesses described in the indictment was not sufficiently definite for a showing of prejudice to be made. No matter what the cause, Baxt's alleged memory loss in this case has been asserted generally, as was the defendant's memory loss in *Ford.* He has made no showing that his memory of the events surrounding his alleged attempts to secure the Summit Trust loan has in any way deteriorated. He surely has not demonstrated that the memory loss he has experienced about those events, if any, would prevent him from offering exculpatory, non-cumulative evidence at trial. Again he relies on generalized claims of prejudice insufficient to substantiate a claim that his Due Process rights have been violated.

### III. Conclusion

I find that the Defendant, Paul Baxt, has not demonstrated that the Government's delay in bringing the indictment in this case was caused by an effort by the Government to obtain a tactical advantage over Baxt. Moreover, Baxt has failed to demonstrate the prejudice he suffered as a result of the preindictment delay in this case with sufficient specificity to demonstrate that his right to Due Process has been violated. Because he has failed to satisfy his burden under both prongs of the applicable legal standard, Baxt's motion to dismiss due to preindictment delay shall be denied.

An appropriate order will be entered by the Court.

### ORDER

This matter having come before the Court on the motion of Defendant Paul Baxt ("Baxt"), to dismiss due to pre-indictment delay, John Voorhees, Esq., Isaacson, Rosenbaum, Woods & Levy, P.C., appearing on behalf of Defendant, and Faith H. Hochberg, Esq., United States Attorney, Mark R. Winston, Esq., Assistant United States Attorney, appearing on behalf of the United States; and,

The Court having considered the submissions of the parties, for the reasons set forth in the OPINION filed concurrently with this ORDER;

IT IS, on this 26th day of October, 1999, hereby ORDERED that the motion to dismiss due to preindictment delay is DENIED.